**ERIC BJORGUM (State Bar No. 198392)**
Eric.bjorgum@kb-ip.com
KARISH & BJORGUM PC
119 E. Union Street, Suite B
Pasadena, CA 91103
Telephone:  (213) 785-8070
Facsimile:   (213) 955-5010

Attorneys for Plaintiffs
Agustin Ramirez, Anthony Ramirez
and Agustin Ramirez

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AGUSTIN RAMIREZ, ANTHONY RAMIREZ and AGUSTIN RAMIREZ, JR.<br><br>Plaintiffs,<br><br>vs.<br><br>MARTIN NAVARRO and DOES 1-10, inclusive,<br>Defendants. | Case No.5:20-cv-2408<br><br>**COMPLAINT FOR:**<br>**1.  FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION;**<br>**2. DILUTION;**<br>**3. COMMERCIAL DISPARAGEMENT;**<br>**4.  STATE LAW TRADE NAME INFRINGEMENT AND DILUTION;**<br>**5.  INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE;**<br>**6. PRELIMINARY AND PERMANENT  INJUNCTIVE RELIEF;**<br>**7. VIOLATION OF CAL. BUS. & PROF. CODE § 17200**<br><br>**JURY TRIAL REQUESTED** |

COMPLAINT

## JURISDICTION AND VENUE

1. These claims arise under the laws of the United States, particularly under the Lanham Act, as amended, 15 U.S.C. § 1051 *et seq.*, Cal. Bus. & Prof. Code § 17200 and California statutory and common law. Jurisdiction is proper under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1138(a). Jurisdiction is also proper pursuant to the Court's supplemental jurisdiction as provided in 28 U.S.C. § 1367.

2. This Court has specific personal jurisdiction over all of the defendants as each has purposefully committed, within the state, the acts from which these claims arise and/or has committed tortious acts outside California, knowing and intending that such acts would cause injury within the state.

3. Venue is proper in the United States District Court for the Central District pursuant to 28 U.S. C. §§ 1391(b) and 1391(c) in that some defendants reside in this District and transact affairs in this District and because a substantial part of the events or omissions giving rise to the claims herein occurred within this District.

## THE PARTIES

4. Plaintiff Agustin Ramirez is a U.S. citizen and resident of California.

5. Plaintiff Anthony Ramirez is a U.S. citizen and resident of California.

6. Plaintiff Agustin Ramirez, Jr. is a U.S. citizen and resident of California.

7. Plaintiffs allege on information and belief that defendant Martin Navarro is a resident of San Bernardino County, State of California.

8. The true names and capacities, whether individual, corporate or otherwise, of the defendants named herein as Does 1 through 10 are presently unknown to Plaintiffs, who therefore sue said defendants by such fictitious names. Plaintiffs will seek to amend this complaint to allege the true names and capacities of said defendants when he has ascertained such information. Plaintiffs are informed

and believe that each defendant named herein as Does 1 through 10 has participated in some or all of the acts or conduct alleged in this Complaint and is liable to Plaintiffs by reason thereof.

9. Plaintiffs are informed and believe that defendants DOES 1-10 are musicians, agents, and/or others in the entertainment industry engaging in acts infringing upon and dilulting plaintiffs marks in cooperation with or at the direction of Defendant Martin Navarro to perform the services which infringe upon and dilute plaintiff's mark, as alleged below.

## HISTORY OF LOS CAMINANTES

10. In the late 1970's, Plaintiffs Agustin Ramirez founded the musical group "Los Caminantes Aztecas" ("The Aztec Walkers") in the city of Bloomington, California. The initial members of the group were plaintiff Ramirez and his brothers Brigido Ramirez, Horacio Ramirez and Martin Ramirez.

11. From the inception of the group, plaintiff Agustin Ramirez is and has been the lead vocalist of the group, a role he has performed continuously since the founding of the group to the present day in connection with the "Los Caminantes" name.

12. After the "Los Caminantes Aztecas" recorded a few songs, decedent Humberto Navarro joined the group briefly as a drummer for the group, only to be replaced by his brother Manuel Navarro. A few years later, Humberto Navarro rejoined the group, and remained a member of the group from that time until his death in June 2011.

13. After the musical group signed a recording contract with Luna Records (also known as Luna Music), in or about the year 1982, the "Aztecas" adjective was dropped from the group's name, leaving the name "Los Caminantes," or "The Walkers." By that time, the members of the "Los Caminantes" performing group were plaintiff Ramirez, his brothers Brigido, Horacio, and Martin, and the decedent

Humberto Navarro.

14. The members of the musical group "Los Caminantes" acted as partners, sharing in the management, profits and expenses of the group.

15. During the 1980s and 1990s, "Los Caminantes" recorded approximately 29 albums for Luna Records/Luna Music, with plaintiff Agustin Ramirez always as lead vocalist. During the same period of time, the musical group "Los Caminantes" toured extensively throughout the United States and Mexico, performing in dances, concerts and massive outdoor events. The group became wildly popular for its "grupero" musical style within the Regional Mexican musical genre. The group appeared on numerous television shows aimed at the Spanish-speaking audience of the United States, Mexico and the Americas.

16. In the years following the signing of the musical group to its first recording contract—when the group toured nationally and internationally—Martin Ramirez died in an auto accident and Brigido and Horacio Ramirez each withdrew from the group. Brigido released his rights in Los Caminantes in January, 1991. On July 20, 1996, Horacio Ramirez signed away his partnership interest of Los Caminantes.  At the close of 1996, the only remaining partners of the "Los Caminantes" musical group were plaintiff Agustin Ramirez and decedent Humberto Navarro. The two hired musicians to perform with the group, some of whom have been with the group for well over a decade. However, plaintiff Agustin Ramirez and Humberto Navarro (who died in 2011) were the only individuals to share in the control, profits and expenses of the musical group.

17. In 2000, plaintiff Agustin Ramirez and decedent Humberto Navarro signed as "Los Caminantes" with the Fonovisa record label, which resulted in the production of five (5) albums, for which plaintiff Agustin Ramirez was the lead vocalist. In 2006, they signed again with the record label associated with the owners of Luna Music, resulting in the production of three (3) more albums, for which

Agustin Ramirez, again, was the lead vocalist.

18.     Luna Records/Luna Music registered the trademark LOS CAMINANTES with the United States Patent and Trademark Office ("USPTO"), in international classification no. 009 for a "series of phonograph records, pre-recorded audio cassette tapes and pre-recorded compact discs, all featuring music," Ser. No. 74/372907. A certificate of registration for the trademark was issued in the name of Luna Music Corporation on December 28, 1993, and later assigned to Luna Management LLC. The registration was cancelled in October 2004.

19.     In 2005, the attorney for plaintiff Agustin Ramirez and decedent Humberto Navarro filed for registration of the trademark LOS CAMINANTES mark in international classification no. 009 in the name of "Los Caminantes Partnership, composed of Humberto Navarro and Agustin Ramirez," for a "series of prerecorded phonograph records, audio cassettes, video cassettes, and compact discs featuring music played in Spanish," Ser. No. 78/657655. issued to registration on August 15, 2006 as Registration No. 3,129,214. In that application, the partnership claimed a first use date of February 14, 1975. That registration expired on or about February 15, 2012.

20.     Plaintiffs are informed and believe that the partners of the "Los Caminantes" musical group never entered into a formal partnership agreement.

21.     Plaintiff Agustin Ramirez never assigned his rights in the "Los Caminantes" name and goodwill associated with the mark to either the partnership with decedent Humberto Navarro or to any individual or entity.

### "LOS CAMINANTES" AFTER HUMBERTO NAVARRO

22.     As Humberto Navarro became ill at the beginning of June 2011, his son, defendant Martin Navarro, took his place as the drummer for the live

performances of "Los Caminantes." Over the ensuing weeks, defendant Martin Navarro continued to perform with "Los Caminantes." Humberto Navarro passed away in 2011.

23. As the remaining partner and member of the Los Caminantes Partnership, plaintiff Agustin Ramirez paid the partnership share of profits that would have been paid to decedent Humberto Navarro to his son Martin.

24. Plaintiffs have been informed that following the death of his father, Martin Navarro formed a musical group that performed under the name "Los Caminantes" at least twice in the month of September 2011.

25. Plaintiffs are entitled to ownership and control of the "Caminantes" mark. Plaintiff Agustin Ramirez is the sole remaining member of the group that first used the "Los Caminantes Aztecas" service mark, later shortened to "Los Caminantes". Humberto Navarro did not join the group until later in its history, and Plaintiff Ramirez did not transfer his interest in the "Los Caminantes" mark to either the decedent Humberto Navarro, the Los Caminantes Partnership, or any other party.

26. Defendants should be enjoined from any use of the "Los Caminantes" name, or any name colorably similar to the "Los Caminantes" name, and this court should determine the fair compensation to be paid to the Estate of Humberto Navarro for the decedent's interest in the partnership business, less any amounts Plaintiffs are compelled to expend in the defense of plaintiff's rights in the name and business of "Los Caminantes" due to the fraudulent conduct of the defendants.

27. On October 30, 2012, Plaintiffs filed an application to register LOS CAMINANTES, which application issued to registration on October 1, 2013 as Registration No. 4,410,019.

28. Defendant Martin Navarro has, over the years, performed using the name "Los Caminantes" or "Los Caminantes HN." Augustin Ramirez has policed

use of the mark and has issued takedown notices to Facebook and YouTube, claiming ownership of the LOS CAMINANTES mark.

## THE SUBSEQUENT LITIGATIONS

29. Following the death of Humberto Navarro and the involvement of Defendant Martin Navarro in the band, there has been an abundance of litigation over use of the LOS CAMINANTES mark.

30. After the death of Humberto Navarro, Agustin Ramirez leaned that Martin Navarro had attempted to get other members of the group to play with a new version of Los Caminantes. Martin Navarro had played drums with the actual Los Caminantes for just a few months, at most.

31. On September 27, 2011, Agustin Ramirez filed suit against Martin Navarro for federal trademark infringement and unfair competition, dilution, disparagement, dissolution of partnership, fraud and other business torts. Navarro answered and counterclaimed, and the parties dismissed all claims without prejudice soon thereafter.

32. In 2013, Ramirez also filed suit against another former member, Mario Sotelo, styled as *Agustin Ramirez, Anthony Ramirez, Agustin Ramirez v. Mario Sotelo,* U.S. Dist; Court, Cent. Dist. Cal., Case No. 5:13-cv-002155-SJ (MRO). In that case, the District Court entered an injunction against Sotelo's use of the mark LOS CAMINANTES.

33. The injunction in *Ramirez v. Sotelo* provided, *inter alia*:

> Defendants, their officers, employees, agents, owners, partners and all persons in active concert and participation with any of them who receive notice of this Court's order, by personal service or otherwise, are permanently enjoined and restrained from using the name "Los Caminantes" or "Caminantes" or any similar form of the name, including without limitation

  "xCaminantes," "Caminantes Para Siempre" or any similar or derivative form of the name "Caminantes," in connection with the advertisement, marketing, promotion, or performance of live performances by any Defendant, except to the extent that nominative fair use applies. Thus, Defendants may state that they used to perform with Los Caminantes as a description of past musical performance experience.

The Ninth Circuit later upheld that ruling in Case. No. 14-55571 on December 5, 2014.

34. Later, Vicente Martinez, a singer, began singing in a version of Los Caminantes. Plaintiffs eventually filed a suit against him and Juan Manuel Navarro, a promoter. That case was styled *Agustin Ramirez, Anthony Ramirez and Agustin Ramirez, Jr. v. Vicente Martinez and Juan Manuel Navarro,* U.S. Dist. Court, Cent. Dist. of Cal., Case No. 5:2017-cv-0221-FMO (GJSx).

35. Following a Motion for Default Judgment and Motion for Summary Judgment, the Court on August 19, 2019 entered a Judgment on behalf of Plaintiffs, ordering that Navarro pay $77,654.00 in damages and fees and enjoying Navarro from: "using the LOS CAMINANTES mark or trade name alone or in combination with any other word or symbols. . . which would be likely to cause confusion, deception of mistake, or [in advertising." Navarro was also enjoined from contacting promoters for the purse of offering the services of Los Caminantes and using any mark or business identifying, or "acting in any fashion" that would represent that he is providing goods and services that are authorized by Los Caminantes. Vicente Martinez was subject to a similar injunction but not damages.

36. Despite all of this litigation, including judgments and injunctions finding that Agustin Ramirez and his family are the owners of the LOS CAMINANTES trademark, Ramirez learned in late 2019 that Martin Navarro was

once again claiming some rights to use LOS CAMINANTES or "Los Caminantes HN." On information and belief, Martin Navarro was either playing concerts as Los Caminantes HN or authorizing others do so.

37. He had started using the name LOS CAMINANTES HN and suggested that Ramirez use the name LOS CAMINANTES AR. Navarro later applied for a trademark registration on LOS CAMINANTES HN, but the Examiner rejected the application under section 2(d) of the Lanham Act, finding the application to be confusing with LOS CAMINANTES.

38. The recent concerts played by Navarro's were advertised in a manner that would be confusing to the relevant market. Sometimes recordings by Agustin Ramirez were used to promote concerts, as were photos of Agustin Ramirez. On information and belief, Martin Navarro did not take reasonable steps to avoid consumer confusion.

39. Further, Martin Navarro's band began re-recording songs that had featured Agustin Ramirez's voice, resulting in limited revenue streams for digital performances of those recordings. Navarro's re-recordings have caused further confusion with the administrator of revenues for some of those performances (SoundExchange), which has resulted in delays for Agustin Ramirez being paid.

40. Finally, Martin Navarro's attorney has instituted an action to cancel Plaintiff's LOS CAMINANTES registration at the U.S. Patent and Trademark Office.

41. In 2020, during the Covid-19 crisis, on information and belief, Martin Navarro has continued to tour or authorize concerts under LOS CAMINANTES HN, but the "HN" in the name was in a smaller font. On information and belief, Navarro would sometimes use other musicians to play. He also used Vicente Martinez to sing, even though Martinez was under an injunction not to perform use LOS CAMINANTES in any manner.

42. In recent months, Navarro's Los Caminantes HN has played in South Carolina, Texas and Southern California. When asked about these shows, Navarro, through his attorney has sometimes denied that he involved or that he even knew about them. However, on information and belief, Navarro has played at some of these concerts and derived licensing revenue from all of them.

43. On information and belief, Navarro has approached members of the LOS CAMINANTES to play live concerts. His band has also driven down the price of the original LOS CAMINANTES. On information and belief, fans showing up for a show of the faux LOS CAMINANTES have been confused and shocked to see that Agustin Ramirez was not performing.

## FIRST CLAIM FOR RELIEF
## (FEDERAL TRADEMARK INFRINGEMENT, FALSE DESCRIPTION, AND UNFAIR COMPETITION)

44. Plaintiffs reallege and incorporate in this cause of action all previous paragraphs of this complaint.

45. This claim for relief arises under 15 U.S.C. § 1125(a)(1)(A) and is alleged against all defendants.

46. Plaintiffs are the owners of the mark "Los Caminantes," or are entitled to sole use and ownership of the business, goodwill, trademark and service mark of "Los Caminantes."

47. None of the defendants named herein have any claim or colorable right to utilize the name "Los Caminantes" either in connection with the live performances or sound recordings of "Los Caminantes."

48. Defendants are using Plaintiffs' "Los Caminantes" mark so as to cause confusion as to Plaintiffs' association with, affiliation with, or sponsorship of the performance of defendants' musical group. Defendants' actions have led to instances of actual confusion by promoters and consumers, including the use of the

"Los Caminantes" name in advertising and the use of the image of plaintiff Agustin Ramirez in such advertising.

49. Defendants' actions also constitute unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50. The actions of Defendants, as alleged herein, have caused damage to Plaintiff's reputation and mark.

51. The actions of Defendants and each of them as herein alleged were and are intended to cause confusion, have caused confusion, and will continue to cause confusion unless enjoined.

52. For each act made in violation of §1125(a), Plaintiffs are entitled to recover actual damages as well as Defendants' profits from such infringement.

53. Plaintiffs are entitled to treble damages and prejudgment interest under 15 U.S.C. ¶ 1117.

54. Plaintiffs are informed and believe that the acts of Defendants complained of herein were undertaken willfully and with the intention of causing confusion, mistake or deception.

55. Monetary relief alone is not adequate to address fully the irreparable injury that defendants' illegal actions have caused and will continue to cause Plaintiffs if defendants' actions are not enjoined. Plaintiffs therefore are also entitled to preliminary and permanent injunctive relief to stop the ongoing acts of unfair competition and other violations by Defendants and anyone acting in concert with them.

## SECOND CLAIM FOR RELIEF
## (DILUTION)

56. Plaintiffs reallege and incorporate in this cause of action all previous paragraphs of this Complaint.

57. This claim for relief arises under section 43(c) of the Lanham Act, 15

U.S.C. § 1125(c) and is alleged against all defendants.

58. Plaintiffs are the owner of the mark "Los Caminantes," or are entitled to sole use and ownership of the business, goodwill, trademark and service mark of "Los Caminantes."

59. The trade name and mark "Los Caminantes" has become famous throughout the United States, through use in the advertising of the musical group's services, through airplay, record sales, appearances of the musical group on broadcast television in Mexico and the United States, newspaper and magazine articles concerning the group, and through public appearances at dances and events. Accordingly, it is entitled to protection under § 1125(c).

60. Defendants' unauthorized use of Plaintiff's trade name and mark does and will dilute the distinctive quality of the trade name and mark and will diminish and destroy the public association of the trade name and mark with Plaintiffs and Plaintiffs' group "Los Caminantes."

61. In engaging in the actions complained of above, Defendants and each of them willfully intended and intend to trade on the reputation of Plaintiff's musical group.

62. In engaging in the actions complained of above, defendants and each of them have willfully intended to cause dilution of the famous trade name and mark belonging to Plaintiffs.

63. For each act violating Plaintiffs' rights, Plaintiffs are entitled to recover actual damages as well as Defendants' profits from such infringement.

64. Plaintiffs are entitled to treble damages and prejudgment interest under 15 U.S.C. ¶ 1117.

65. Plaintiffs are informed and believe that the acts of Defendants complained of herein were undertaken willfully and intentionally by Defendants.

66. Monetary relief alone is not adequate to address fully the irreparable

injury that Defendants' illegal actions have caused and will continue to cause Plaintiffs if Defendants' acts are not enjoined. Plaintiffs are therefore also entitled to preliminary and permanent injunctive relief to stop Defendants' ongoing violations as well as those of anyone acting in concert with them.

<b><u>THIRD CLAIM FOR RELIEF</u></b><br><b>(COMMERCIAL DISPARAGEMENT)</b>

67. Plaintiffs reallege and incorporate in this cause of action all previous paragraphs of this complaint.

68. This claim for relief arises under 15 U.S.C. § 1125(a)(1)(B) and is alleged against all defendants.

69. Plaintiffs are the owner of the mark LOS CAMINANTES or are entitled to sole use and ownership of the business, goodwill, trademark and service mark of "Los Caminantes."

70. Defendants and their agents or principals, in connection with others, have misrepresented the nature, characteristics and qualities of defendants" musical group in a manner that has caused, and is likely to continue to cause, damage to Plaintiff.

71. In engaging in the actions complained of above, defendants and each of them willfully intended and continue to intend to trade on the reputation of Plaintiffs and Plaintiffs' musical group "Los Caminantes."

72. In engaging in the actions complained of above, defendants and each of them have willfully intended to cause dilution of the famous trade name and mark belonging to plaintiff.

73. For each act violating federal law, Plaintiffs are entitled to recover actual damages as well as Defendants' profits from such infringement.

74. Plaintiffs are entitled to treble damages and prejudgment interest under 15 U.S.C. ¶ 1117.

75. Plaintiffs are informed and believe that the acts of Defendants complained of herein were undertaken willfully and intentionally by Defendants.

76. Monetary relief alone is not adequate to address fully the irreparable injury that defendants' illegal actions have caused and will continue to cause Plaintiffs if not enjoined. Plaintiffs therefore is also entitled to preliminary and permanent injunctive relief to stop Defendants' ongoing violations as well as those of anyone acting in concert with them.

## FOURTH CLAIM FOR RELIEF
## (STATE LAW TRADE NAME INFRINGEMENT AND DILUTION)

77. Plaintiffs reallege and incorporate in this cause of action all previous paragraphs of this complaint. This claim for relief arises under the laws of the State of California and is alleged against all defendants.

78. Plaintiffs are the owner of the mark "Los Caminantes," or are entitled to sole use and ownership of the business, goodwill, trademark and service mark of "Los Caminantes."

79. By their acts alleged herein, defendants have engaged in trade name infringement and dilution, California Bus. & Prof. Code §§ 14330 et seq., and §§ 14402 et seq.

80. Defendants have intentionally deceived the public by misrepresenting that their services are connected with Plaintiffs and Plaintiffs' musical group "Los Caminantes."

81. Plaintiffs are informed and believe that the acts of defendants described herein were undertaken willfully and with the intention of causing confusion, mistake or deception. Monetary relief alone is not adequate to address fully the irreparable injury that defendants" illegal actions have caused and will continue to cause Plaintiffs if defendants" conduct is not enjoined. Plaintiffs therefore are also

entitled to preliminary and permanent injunctive relief to stop defendants" ongoing acts of unfair competition.

## FIFTH CLAIM FOR RELIEF
## (INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE)

82. Plaintiffs reallege and incorporate in this cause of action all previous paragraphs of this Complaint.

83. This claim for relief arises under the common law of the State of California and is alleged against all defendants.

84. Defendants and each of them, through their actions, have interfered with the prospective business advantage of Plaintiffs by interfering with the right of Plaintiffs to exploit and benefit commercially from the trade name and mark of Plaintiffs and Plaintiffs' musical group and the goodwill of the business of Plaintiffs' musical group.

85. Plaintiffs have been damaged by the tortious interference by defendants and each of them with Plaintiffs' economic relations in an amount to be alleged by amendment to this Complaint.

86. The aforementioned acts of Defendants were and are willful, oppressive and malicious. Plaintiffs therefore should be awarded punitive damages in an amount to be alleged by amendment to this Complaint.

## SIXTH CLAIM FOR RELIEF
## (PRELIMINARY & PERMANENT INJUNCTIVE RELIEF)

87. Plaintiffs reallege and incorporate in this cause of action all previous paragraphs of this complaint.

88. The continuing wrongful acts of defendants herein have harmed and continue to harm the interest of plaintiff in the use of the name and mark "Los Caminantes."

89. If this court does not issue a preliminary and permanent injunction against defendants and each of them prohibiting the use of the name "Los Caminantes" and other confusingly similar terms, in connection with the goods and services of defendants" musical group, Plaintiff will suffer irreparable harm for which there is no adequate remedy at law.

90. If Defendants continue to perform under a confusing name, Plaintiffs may be constrained to bring an application for a Temporary Restraining Order.

## SEVENTH CLAIM FOR RELIEF
## (CAL. BUS. & PROF. CODE § 17200)

91. Plaintiffs reallege and incorporate in this cause of action all previous paragraphs of this Complaint.

92. This claim for relief arises under the laws of the State of California and is alleged against all defendants.

93. Business and Professions Code section 17200 et seq. (the Unfair Competition Law or UCL") prohibits any lawful, unfair or fraudulent business act or practice, any unfair deceptive, untrue or misleading advertising, and any violation of Business and Professions Code section 17500 et seq.

94. Defendants violated the UCL by engaging in unlawful, unfair, and fraudulent business acts or practices, including by not limited to: (a) knowingly and intentionally inducing the public to believe that "Los Caminantes" were playing at their live performances; and (b) by making or disseminating false, misleading or deceptive statements to the public indicating that Defendants have the right to perform using the LOS CAMINANTES trademark.

## Prayer for Relief

WHEREFORE, Plaintiffs pray for judgment as follows:

1. An order declaring that Defendants have no rights to use the LOS CAMINANTES mark.

2. For an order permanently and preliminarily enjoining the Defendants, their officers, agents, employees, and those acting in concert or conspiracy with them from:

    a. Directly or indirectly using, printing, distributing, selling, offering for sale, possessing, advertising, performing under, promoting or displaying in any way the LOS CAMINANTES mark or any simulation, reproduction, copy or colorable imitation of the LOS CAMINANTES mark;

    b. Making any unauthorized use of the LOS CAMINANTES mark in such a way as to cause confusion, mistake or deception as to the affiliation, connection or association of the Defendants as to the origin, sponsorship or approval of Plaintiffs' products or services;

    c. Otherwise infringing Plaintiffs' rights in and to the LOS CAMINANTES mark.

3. For an order restraining Defendants' further dilution of the LOS CAMINANTES mark.

4. For a finding that the Defendants' acts were undertaken, intentionally, maliciously and/or with a reckless and wanton disregard of the Plaintiffs' common law trademark rights and for an award of exemplary damages pursuant to California Civil Code section 3295 in an amount sufficient to punish, deter, and make an example of Defendants for the acts complained of herein.

5. For an award of damages based upon Plaintiffs' lost profits and disgorgement of Defendants' profits.

6. For any enhanced damages pursuant to 15 U.S.C. § 1117.

7. For an award of costs, fees and expenses incurred in this action.

8. That Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

Dated: November 18, 2020

KARISH & BJORGUM, PC

By: _____
A. Eric Bjorgum
Attorneys for Plaintiffs Agustin Ramirez, Anthony Ramirez and Agustin Ramirez, Jr.

## REQUEST FOR JURY TRIAL

Pursuant to Fed.R.Civ.P. 38(b), Plaintiffs hereby request a trial by jury of all issues raised by the Complaint which are properly triable to a jury.

Dated: November 18, 2020          KARISH & BJORGUM, PC

By: _____

 A. Eric Bjorgum
Attorneys for Plaintiffs Agustin Ramirez,
Anthony Ramirez and Agustin Ramirez, Jr.