Larry Zerner (155473)
Law Office of Larry Zerner
1801 Century Park East. Ste. 2400
Los Angeles, CA 90067
Telephone:   (310) 773-3623
Email: Larry@Zernerlaw.com

Attorneys for Defendant Martin Navarro

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

AGUSTIN RAMIREZ, ANTHONY
RAMIREZ and AGUSTIN RAMIREZ, Jr.

                              Plaintiffs,

              vs.

MARTIN NAVARRO and DOES 1-10,
inclusive,

                              Defendants.

Case No. 5:20-cv-2408 SSS (SPx)

**NOTICE OF MOTION AND
MOTION FOR SUMMARY
JUDGMENT OR IN THE
ALTERNTIVE FOR SUMMARY
ADJUDICATION OF ISSUES;
MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATIONS
OF MARTIN NAVARRO AND
LARRY ZERNER**

**Date: September 23, 2022
Time: 2:00 p.m.
Courtroom: 2**

**Trial Date: Not Set
Pre-Trial Conference: September 9,
2022
Discovery Cut-Off: March 4, 2022**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: Please take notice that Defendant Martin Navarro will move and hereby does move the above-entitled Court for an Order granting summary judgment on Plaintiffs' claims or, in the alternative, granting summary adjudication on the issue of laches. Said motion to be heard on September 23, 2022, at 2:00 p.m. or as soon thereafter as this matter may be heard. This motion is made following the L.R. 7-3 conference of counsel which took place on March 4, 2022. The grounds for this motion are the following:

Plaintiffs cannot prevail on their causes of action for federal trademark infringement, trademark dilution, commercial disparagement, state trademark infringement, and violations of Cal. Business and Professions Code §17200 because they freely admit that they knew of defendants alleging infringing activities since at least September 2011 but did not file the present lawsuit until more than nine years later, in November 2020, and are therefore guilty of laches.

An additional reason that Plaintiffs cannot prevail on their trademark infringement claims is that by dismissing the 2011 Complaint, they have impliedly acquiesced to Defendant's use of the mark.

Plaintiffs cannot prevail on their claims for interference with prospective business advantage because these claims are barred by the statute of limitations in that Plaintiffs admit that alleged violations have been occurring for more than nine years prior to filing the lawsuit.

Plaintiffs cannot prevail on their claim for preliminary and permanent injunctive relief because this is not a cause of action.

As a result, Defendant is entitled to judgment as a matter of law under Fed. R. Civ. P. Rule 56. This motion is based on this Notice, the accompanying Memorandum of Law, the Statement of Uncontroverted Facts and Conclusions of Law, the Declarations of Martin Navarro and Larry Zerner, the deposition transcripts of Agustin Ramirez,

Anthony Ramirez and Agustin Ramirez, Jr., Plaintiff's Response to Interrogatories, the Proposed Order, the entire court docket and file for this case on file with the Court and such other and further evidence as the Court may consider at any hearing on this matter.

Dated: July 5, 2022                                    Law Office of Larry Zerner

                                                    By: /Larry Zerner/
                                                    _____

## Table of Contents

I. INTRODUCTION ................................................................................. 1

II. FACTUAL HISTORY ......................................................................... 2

    A. HISTORY OF "LOS CAMINANTES" .............................................. 2

    B. THE 2005 TRADEMARK ............................................................... 3

    C. HUMBERTO NAVARRO AND DEFENDANT MARTIN NAVARRO ........... 3

    C. THE 2011 LAWSUIT ..................................................................... 4

    D. THE 2013 TRADEMARK ............................................................... 4

    E. PLAINTIFFS OTHER LAWSUITS ................................................... 5

    F. DEFENDANT'S CONTINUED TOURING ......................................... 5

III. PLAINTIFFS' FEDERAL AND STATE TRADEMARK CLAIMS AND CLAIM FOR VIOLATION OF BUS. & PROF. CODE §17200 ARE BARRED BY THE DOCTRINE OF LACHES. ................................................................. 6

    I.    1. PLAINTIFFS' DELAY IN FILING THIS LAWSUIT WAS UNREASONABLE .................... 7

    A.    a. Plaintiffs Admit They Knew of the Alleged Wrongful Conduct More Than Nine Years Prior to Filing this Lawsuit .............................................. 7

    b. Plaintiffs' Near-Decade Delay Was Unreasonable .......................... 8

    2.    Plaintiffs' Unreasonable Delay Will Cause Defendant Prejudice if the Lawsuit Proceeds ............................................................................ 12

    3. The Possibility of Future Consumer Confusion is Not Grounds To Grant An Injunction. ......................................................................... 14

IV. PLAINTIFFS HAVE ACQUIESCED TO DEFENDANT'S USE OF THE MARK. ................................................................................................ 14

V. PLAINTIFFS' FIFTH CLAIM FOR RELIEF FOR INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS ............................................................. 15

VI. THE SIXTH CAUSE OF ACTION IS NOT A VIABLE CAUSE OF ACTION 17

VII. CONCLUSION ............................................................................. 17

**TABLE OF AUTHORITIES**

**CASES**

*Aryeh v. Canon Bus. Solutions., Inc.,* 55 Cal. 4th 1185, 1192 (2013)..................16

*DC Comics v. Pac. Pictures Corp.,* 938 F. Supp. 2d 941 (C.D. Cal. 2013).......................16

*Finnie v. Town of Tiburon,* 199 Cal.App.3d 1, 14 (1988). ....................................7

*GoTo.com v. Walt Disney Co.*, 202 F.3d 1199, 1209 (9th Cir. 2000) ........................6

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 835 (9th Cir. 2002) . 6, 7, 8, 13

*Kiang v. Strycula*, 231 Cal.App.2d 809, 811–12 (1965) ........................................16

*Lutz v. CBRE Grp., Inc.,* 2013 WL 4102157, at *9 (S.D. Cal. Aug. 13, 2013).................17

*Miller* ........................................................................................ 7, 8, 13

*Miller v. Glenn Miller Prods.,* 318 F. Supp.2d 923, 941 (C.D. Cal. 2004), *aff'd,* 454 F.3d 975 (9th Cir. 2006)................................................................6

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.,* 894 F.3d 1015, 1027 (9th Cir. 2018);..6, 8, 9, 14

*ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.,* 314 F.3d 62 (2d Cir. 2002), ................................................................15

*Roberts v. Los Angeles County Bar Assn.,* 105 Cal.App.4th 604, 618, (2003) .................17

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.,* 621 F.3d 981, 988 (9th Cir. 2010)................................................................15

*The Saul Zaentz Co. v. Wozniak Travel, Inc.,* 627 F.Supp.2d 1096, 1109 (N.D. Cal. 2008) ....................................................................................6

*Trembath v. Digardi*, 43 Cal.App.3d 834, 836, 118 Cal.Rptr. 124 (1974) .........................16

**STATUTES**

Cal. Civ. Proc. Code § 339(1)..................................................................... 14

FRCP 26(a)(1)(A)(iii) .............................................................................. 10

*Hoffman v. Constr. Protective Servs., Inc.,* 541 F.3d 1175, 1179 (9th Cir. 2008)...................................11

# I. INTRODUCTION

This lawsuit concerns the Mexican American band "Los Caminantes*"* whose main members were Agustin Ramirez and Humberto Navarro.  The Plaintiffs are Agustin Ramirez and his two sons, Anthony and Agustin, Jr.  The Defendant is Martin Navarro, the son of Humberto Navarro.  Since Humberto Navarro's death in 2011, Martin has been touring with his band "Los Caminantes de Humberto Navarro*"* aka *"Los Caminantes HN."* It is undisputed that Plaintiffs knew Navarro was using this mark since September 2011, yet did not file the present lawsuit until November 2020, more than nine years later.  Because Plaintiffs waited well outside the four-year statute of limitations period before filing this lawsuit, they are guilty of laches, and the Court should award judgment to Defendant.

As will be shown, *infra*, there are no factual disputes about Navarro's use of the mark since 2011 or Plaintiffs' knowledge of this use.  In fact, most of the facts that Defendant relies on in this motion are admitted by Plaintiffs in the Complaint.[1]   In the 2020 Complaint, Plaintiffs admit that they knew of the alleged infringement in 2011 and thought it was so much of a problem that they filed a virtually identical lawsuit for trademark infringement and related claims against Defendant back in 2011.  But Plaintiffs dismissed that lawsuit in June 2012 and then took no further legal action against Defendant until filing the present lawsuit in November 2020.

This is despite the fact that in the period between 2012 and 2020, Plaintiffs filed two other lawsuits against possible infringers of the "Los Caminantes" trademark.  Accordingly, Plaintiffs had the means and opportunity to file a lawsuit for trademark infringement much earlier and chose not to do so.  Plaintiffs cannot simply wait and wait

---

[1] Because multiple complaints are referred to in this Motion, the operative complaint in this lawsuit will be referred to as the "2020 Complaint."

and wait and then, after so many years have passed, sue to stop Navarro from using his trademark and to recover ten years of damages.  Because laches is designed to protect a trademark defendant from precisely this type of dilatory conduct, it should be applied here.

## II. FACTUAL HISTORY

### A. History of "Los Caminantes"

The musical group "Los Caminantes" was formed in the late 1970's by Agustin Ramirez and his brothers Brigido Ramirez, Horacio Ramirez, and Martin Ramirez.  The group was originally called "Los Caminantes Aztecas" (2020 Complaint. ¶10).

After the "Los Caminantes Aztecas" recorded a few songs, Humberto Navarro (father of Defendant Martin Navarro) joined the group briefly as a drummer for the group, only to be replaced by his brother Manuel Navarro. A few years later, Humberto Navarro rejoined the group and remained a member of the group from that time until his death in June 2011. (2020 Complaint ¶12).

After the musical group signed a recording contract with Luna Records (also known as Luna Music) in or about the year 1982, the "Aztecas" adjective was dropped from the group's name, leaving the name "Los Caminantes" or "The Walkers." By that time, the members of the "Los Caminantes" performing group were Plaintiff Agustin Ramirez, his brothers Brigido, Horacio, and Martin, and decedent Humberto Navarro. (2020 Complaint ¶13).

During the 1980s and 1990s, "Los Caminantes" recorded approximately 29 albums for Luna Records/Luna Music.  During the same period of time, the musical group "Los Caminantes" toured extensively throughout the United States and Mexico, performing in dances, concerts, and massive outdoor events. The group became wildly popular for its "grupero" musical style within the Regional Mexican musical genre. The group appeared on numerous television shows aimed at the Spanish speaking audience of the United States, Mexico, and the Americas. (2020 Complaint ¶15).

1    In the years following the signing of the musical group to its first recording

2 contract—when the group toured nationally and internationally—Martin Ramirez died in

3 an auto accident and Brigido Ramirez and Horacio Ramirez each withdrew from the

4 group. Brigido released his rights in Los Caminantes in January 1991. On July 20, 1996,

5 Horacio signed away his partnership interest of Los Caminantes. At the close of 1996,

6 the only remaining partners of the "Los Caminantes" musical group were Plaintiff

7 Agustin Ramirez and decedent Humberto Navarro. The two hired musicians to perform

8 with the group. However, Plaintiff Agustin Ramirez and Humberto Navarro were the

9 only individuals to share in the control, profits, and expenses of the musical group. (2020

10 Complaint ¶16).

11    **B. The 2005 Trademark**

12    In 2005, the attorney for Plaintiff Agustin Ramirez and decedent Humberto Navarro

13 filed for registration of the trademark LOS CAMINANTES mark in international

14 classification No. 009 in the name of "Los Caminantes Partnership, composed of

15 Humberto Navarro and Agustin Ramirez," for a "series of prerecorded phonograph

16 records, audio cassettes, video cassettes, and compact discs featuring music played in

17 Spanish," Ser. No. 78/657655. issued to registration on August 15, 2006, as Registration

18 No. 3,129,214. In that application, the partnership claimed a first use date of February

19 14, 1975. That registration expired on or about February 15, 2012. (2020 Complaint

20 ¶19).

21    **C. Humberto Navarro and Defendant Martin Navarro**

22    In 2011, Humberto Navarro became ill and his son, Defendant Martin Navarro, was

23 hired as the drummer for live performances of "Los Caminantes." Over the ensuing

24 weeks, Martin Navarro continued to perform with "Los Caminantes." Humberto

25 Navarro died in June 2011 (2020 Complaint ¶22 and Navarro Decl. ¶7)

26    After Humberto death, Plaintiff Agustin Ramirez paid Martin Navarro his father's

27 share of the "Los Caminantes" partnership profits. (2020 Complaint ¶23).  As the son of

28 Humberto Navarro, who was the co-owner of the "Los Caminantes" trademark, Martin

Navarro believed that he had the right to use the "Los Caminantes" trademark.  (Navarro Decl. ¶7).

A few months after Humberto Navarro died, Agustin Ramirez told Martin Navarro to leave the band.  Martin Navarro then started a new band called "Los Caminantes de Humberto Navarro" or "Los Caminantes HN" to differentiate his band from the Ramirez/Navarro partnership version of "Los Caminantes."  (Navarro Decl. ¶6). Martin Navarro began performing with his new band in September 2011 (2020 Complaint ¶24.).

## C. The 2011 Lawsuit

On September 27, 2011, Agustin Ramirez filed a lawsuit against Martin Navarro for federal trademark infringement, unfair competition, dilution, and various torts, including interference with prospective business advantage ("the 2011 Lawsuit").  (2020 Complaint ¶31 and 2011 Complaint, Exhibit 1 to Zerner Decl).  The 2011 Lawsuit is very similar to the present lawsuit, and some of the paragraphs of the present lawsuit appear to have been copied verbatim from the 2011 Lawsuit (e.g., ¶¶10-22 in the 2011 Lawsuit are almost identical to ¶¶10-21 in the 2020 Complaint). The 2011 Lawsuit alleges that Martin Navarro began using the "Los Caminantes" mark in September 2011 and that this constituted trademark infringement and trademark dilution.  (Exhibit 1 to Zerner Decl. ¶33-34, 41-63).

However, for reasons that are unknown, Agustin Ramirez dismissed the 2011 Lawsuit, without prejudice, in June 2012. (2020 Complaint ¶31, Exhibit 2 to Zerner Decl).

## D. The 2013 Trademark

The registration for "Los Caminantes" that was owned by Agustin Ramirez and Humberto Navarro as partners expired on or about February 15, 2012. (2020 Complaint ¶19).

Six months later, on October 30, 2012, Plaintiffs filed a new trademark registration for "Los Caminantes," which issued on October 1, 2013, Registration No. 4,410,019. (2020 Complaint ¶27).  As discussed, *supra*, at the time that Plaintiffs filed for the new

4

trademark, they knew that Defendant Martin Navarro was already using the "Los Caminantes do Humberto Navarro" mark.

**E. Plaintiffs Other Lawsuits**

Plaintiffs admit they knew that Defendant Martin Navarro was regularly touring between 2011 and 2020 and that there was nothing stopping them from filing a lawsuit against Defendant before 2020. (Agustin Ramirez Depo Transcript P.36:11-37:13) In fact, in the 2020 Complaint, Plaintiffs admit that they filed two lawsuits against other alleged infringers of the "Los Caminantes" trademark during that time. One lawsuit was filed in 2013, styled as *Agustin Ramirez, Anthony Ramirez, Agustin Ramirez v. Mario Sotelo,* USDC Case No. 5:13-cv-002155-SJ (MRO). (2020 Complaint, ¶32 and Exhibit 3 to Zerner Decl.).

The second lawsuit was filed in 2017. That case was styled *Agustin Ramirez, Anthony Ramirez and Agustin Ramirez, Jr. v. Vicente Martinez and Juan Manuel Navarro,* USDC Case No. 5:2017-cv-0221-FMO (GJSx)[2]. (2020 Complaint ¶34 and Exhibit 4 to Zerner Decl).

Accordingly, Plaintiffs had the means and opportunity to pursue their trademark infringement claims against Defendant well before November 2020 (when the present lawsuit was filed) but chose not to. Plaintiffs' dilatory conduct precludes them from pursuing their claims against Defendant now.

**F. Defendant's Continued Touring**

Since 2011, Defendant Martin Navarro has made a living touring with his band using "Los Caminantes de Humberto Navarro" or "Los Caminantes HN." (Navarro Decl. ¶9). Defendant has regularly performed about 3 weekends every month since 2011 (with the exception of the period between March 2020 and April 2021, when concerts were limited due to the Covid-19 crisis.) Performing with the band is Defendant's primary source of income, and he regularly earns $4,000-$6,000 per weekend (after paying

---

[2] Juan Manuel Navarro is not related to Defendant Martin Navarro.

1   expenses) touring with the band.  An injunction stopping Defendant from using the mark
2   would be devastating financially for him.

### III. PLAINTIFFS' FEDERAL AND STATE TRADEMARK CLAIMS AND CLAIM FOR VIOLATION OF BUS. & PROF. CODE §17200 ARE BARRED BY THE DOCTRINE OF LACHES.

Laches is an "equitable time limitation" on a plaintiff's right to bring suit, which rests on the maxim that "'one who seeks the help of a court of equity must not sleep on his rights.'" *Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 835 (9th Cir. 2002) (citation omitted). Laches "penalizes dilatory conduct." *Id.* at 837-38. Thus, there is a presumption that a Lanham Act plaintiff is barred by laches if he fails to "file suit promptly when the defendant commences the wrongful conduct." *Id.*

Laches is a well-established defense to Lanham Act claims. *See Jarrow Formulas*, 304 F.3d at 835. *See also GoTo.com v. Walt Disney Co.*, 202 F.3d 1199, 1209 (9th Cir. 2000) (recognizing laches defense to federal trademark infringement claims); *The Saul Zaentz Co. v. Wozniak Travel, Inc.,* 627 F.Supp.2d 1096, 1109 (N.D. Cal. 2008) (same). Laches is also an available defense to state law trademark infringement and dilution claims and unfair competition claims pursuant to Business & Professions Code § 17200. *Jarrow Formulas,* 304 F.3d at 842-43; *Saul Zaentz,* 627 F. Supp. 2d at 1109. Moreover, laches is a bar to ***both monetary and injunctive relief***. *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.,* 894 F.3d 1015, 1027 (9th Cir. 2018); *Jarrow Formulas*, 304 F.3d at 840; *Miller v. Glenn Miller Prods.,* 318 F. Supp.2d 923, 941 (C.D. Cal. 2004), *aff'd*, 454 F.3d 975 (9th Cir. 2006).

Although the factual nature of trademark law can prevent resolution on summary judgment, a district court may nonetheless "'property grant summary judgment'" on a laches defense. *Saul Zaentz*, 627 F. Supp. 2d at 1108 (citation omitted). The defense will apply if a defendant shows both that the plaintiff's delay in filing suit was ***"unreasonable,"*** and that the defendant ***"would suffer prejudice"*** from the delay if the suit continues. *Saul Zaentz*, 627 F. Supp. 2d at 1108-09.

The standard for laches under federal and California law are "substantially similar." *Jarrow Formulas,* 304 F.3d at 842 (applying federal laches standard to California statutory claims, including alleged violation of Bus. & Prof. Code §17200). In California, laches is similarly established by showing ***unreasonable delay*** in bringing the action and ***prejudice to defendant*** therefrom, and it is a valid defense to state injunctive relief. *Finnie v. Town of Tiburon,* 199 Cal.App.3d 1, 14 (1988).

Here, Plaintiffs' near-decade delay in pursuing his trademark claims under the Lanham Act and California law was unreasonable, and Navarro will suffer prejudice if the claims proceed. Thus, Plaintiffs' First, Second, and Third Claims for relief under the Lanham Act, Fourth Claim for Relief under California trademark law, and Seventh Claim for Relief under Business & Professions Code §17200 are all barred by laches.

## I.    1.    PLAINTIFFS' DELAY IN FILING THIS LAWSUIT WAS UNREASONABLE

In determining whether delay was "unreasonable," courts consider both the length of the delay and whether that length was unreasonable. *Miller*, 318 F. Supp.2d at 941.

### A.    a.    Plaintiffs Admit They Knew of the Alleged Wrongful Conduct More Than Nine Years Prior to Filing this Lawsuit

The length of a plaintiff's delay in filing suit is measured from the time the plaintiff knew or should have known about his potential claim.  *Jarrow Formulas*, 304 F.3d at 838; *Miller*, 318 F. Supp.2d at 941.

Here, Defendant Martin Navarro began performing with his band under the names "Los Caminantes de Humberto Navarro" or "Los Caminantes HN" in September 2011 (2020 Complaint ¶24.). Plaintiffs filed their first trademark infringement against Defendant that same month, asserting basically identical allegations to the claims set forth in the present lawsuit. See, 2020 Complaint ¶31 and Exhibit 1 to Zerner Decl.

Thus, Plaintiffs knew of Defendant's alleged wrongful conduct by September 27, 2011, when they filed the 2011 Lawsuit, which asserted the same Lanham Act Claims,

California trademark claims, and state unfair competition claim as in the 2020 Complaint.

### b. Plaintiffs' Near-Decade Delay Was Unreasonable

#### (1)   *A Presumption of Laches Applies to Plaintiffs' Near-Decade Delay*

The reasonableness of a plaintiff's delay in filing suit is considered with reference to the relevant statute of limitations period. *Jarrow Formulas*, 304 F.3d at 838; *Saul Zaentz*, 627 F. Supp. 2d at 1113. When, as with the Lanham Act, a federal statute has no specific statute of limitations, courts generally presume that Congress intended to "borrow" the limitations period from the most closely analogous action under state law. *Jarrow Formulas,* 304 F.3d at 836; *Saul Zaentz,* 627 F. Supp. 2d at 1114. Thus, the Ninth Circuit has determined that Lanham Act claims are governed by the four-year statute of limitations for California trademark infringement and dilution claims. *Pinkette Clothing,* 894 F.3d at 1025. *See also Miller*, 318 F. Supp.2d at 942 (recognizing plaintiffs' claims, including its Lanham Act claims, were governed by a four-year statute of limitations).

Importantly, a theory of "continuing wrong" is not a bar to a laches defense. *Jarrow Formulas,* 304 F.3d at 837 (citing *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 821-22 (7th Cir. 1999)).[3] Although Lanham Act violations can be "ongoing," i.e., occurring both inside and outside the limitations period, laches will nonetheless ***be presumed*** if ***"any part of the claimed wrongful conduct"*** occurred beyond the limitations period. *Jarrow Formulas,* 304 F.3d at 837. Thus, a plaintiff is not entitled to a

_____

[3] Without the availability of the application of laches to a claim arising from a continuing wrong, a party could, theoretically, delay filing suit indefinitely." *Hot Wax*, 191 F.3d at 821-22.

presumption against laches simply because *"some"* of the alleged wrongful conduct occurred within the limitations period. *Id.*

Here, since Plaintiffs' near-decade delay is more than twice the analogous four-year statute of limitations, a strong presumption of laches applies. *See Pinkette Clothing,* 894 F.3d at 1025 (applying "strong presumption of laches" when plaintiff delayed only one year beyond the four-year statute).

(2)   *A Majority of the "Delay and Prejudice Factors" Weigh in Favor of Applying Laches*

In each case, the district court must weigh the plaintiff's delay and the resulting prejudice to the defendant to determine whether and to what extent laches bars the relief requested by the plaintiff, including an injunction. The Ninth Circuit has established a set of factors to guide the court's analysis of the "delay and prejudice," including: (1) the strength and value of the trademark rights asserted; (2) plaintiff's diligence in enforcing its mark; (3) the harm to plaintiff if relief is denied; (4) good faith ignorance by defendant; (5) competition between plaintiff and defendant; and (6) the harm suffered by defendant because of the delay. *Pinkette Clothing*, 894 F.3d at 1025 (citing *E-Sys., Inc. v. Monitek, Inc.,* 720 F.2d 604, 607 (9th Cir. 1983)).

With regard to the first factor (the strength and value of the mark), Plaintiffs have not provided any evidence that the mark is strong or of its value.  Neither in their initial disclosures pursuant to Rule 26, nor in their responses to Requests for Documents, have Plaintiffs provided any documents concerning the strength or value of the Los Caminantes mark.  As there is no evidence that the mark is particularly strong or valuable, this factor weighs in favor of laches.

The **second factor** (plaintiff's diligence in enforcing the mark) weighs strongly in favor of laches. As discussed above, it is undisputed that Plaintiffs knew of Defendant's alleged wrongful conduct nearly a decade prior to filing this action but did not pursue the

claim. Plaintiffs admit in the 2020 Complaint that in September 2011, they filed a lawsuit against Defendant for trademark infringement and related claims but then dismissed the case. (2020 Complaint ¶31). Plaintiffs then waited an additional 8½ years to file this lawsuit. Nevertheless, in the time between dismissing the 2011 Lawsuit in June 2012 and filing this lawsuit in November 2020, Plaintiffs pursued two other lawsuits for trademark infringement against other alleged infringers using the mark. (2020 Complaint ¶32, 34).  Plaintiff Agustin Ramirez admitted in his deposition that there was nothing stopping Plaintiffs from also suing Defendant between 2012 and 2020. (Ramirez Depo, 36:11-37:11).  Accordingly, it is undisputed that Plaintiffs were not diligent in enforcing their trademark claims against Defendant.

The **third factor** (harm to the senior user if relief is denied) similarly weighs strongly in favor of laches. The alleged trademark infringement has been going on since 2011, yet Plaintiffs have failed to produce any documentary evidence that this has caused them financial harm. Pursuant to FRCP 26(a)(1)(A)(iii), Plaintiffs were required to disclose to Defendant at the outset of the case "a computation of each category of damages claimed" and "make available for inspection and copying . . .the documents or other evidentiary material. . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  However, not only have Plaintiffs failed to make any documents related to their alleged damages available for inspection and copying, but their response in their initial disclosures to the computation of each category of damages was simply, "**N/A,**" i.e., not applicable.  (See, Exhibit 8 to Zerner Decl., Plaintiff's Initial Disclosures Pursuant to Rule 26).

Moreover, Rule 26(e)(1)(A) requires disclosing parties to timely supplement their prior disclosures when the prior response is "incomplete or incorrect." Rule 37(c)(1) "gives teeth" to these requirements by precluding a party from using information at trial that was required to be disclosed by Rule 26(a) but was not. *Hoffman v. Constr.*

*Protective Servs., Inc.,* 541 F.3d 1175, 1179 (9th Cir. 2008). Accordingly, as Plaintiffs failed to comply with their Rule 26 obligations, they would be precluded from introducing any documents or evidence now concerning any damages.

Also, Plaintiff Agustin Ramirez testified in his deposition that he does not have any documents that would show that Plaintiffs are making less money because of Defendant's band. (Ramirez Depo, 43:11-14).  The other plaintiffs, Anthony Ramirez and Agustin Ramirez, Jr. are the sons of Agustin Ramirez.  They both testified that they have no information as to the financials of the band. (Anthony Ramirez Depo 10:18-23, Agustin Ramirez Jr. Depo 9:18-10:3).

Thus, there is ***no evidence*** that Plaintiffs have incurred any monetary damages to date as a result of Defendant's actions. Accordingly, Plaintiffs cannot show that they will be harmed if an injunction is denied.

The **fourth factor** (good faith of the defendant) also weighs in favor of laches. When Humberto Navarro died in 2011, he was the co-owner of the "Los Caminantes" trademark.  After Humberto died, Plaintiff Agustin Ramirez paid Defendant Martin Navarro his father's share of the partnership profits (2020 Complaint ¶23), and Defendant believed that he had the right to use the name (Navarro Decl. ¶7). Furthermore, the 2005 trademark expired in 2012.  After it expired, and with full knowledge that Defendant was using the mark, Plaintiffs filed a new trademark application for "Los Caminantes."  Accordingly, as Defendant was already using the mark at the time that Plaintiffs filed for the current trademark, Defendant has the right to continue to use the trademark.

The **fifth factor** (competition between senior and junior users) also weighs in favor of laches or is, at best, neutral. Plaintiffs have provided no evidence of competition between the two bands.  None of the three Plaintiffs was able to testify on personal knowledge about any competition between the two bands.  Nor have Plaintiffs provided

any documentary evidence (e.g., surveys, witness statements) detailing any competition between the bands.

Finally, the **six factor** (extent of harm suffered by the junior user because of the delay) weighs strongly in favor of laches. Defendant has been touring as "Los Caminantes HN" or "Los Caminantes de Humberto Navarro" since 2011.  He has built up his band so that he can tour across the country and is usually on the road three weekends a month.  He regularly performs between 100 and 180 times per year. He currently nets approximately $4,000-$6000 per weekend performances touring with the band which is his principal source of income.  At this time, he has shows booked every weekend through the end of November 2022.  Navarro Decl. ¶10-12.

An injunction forcing him Defendant to stop performing as "Los Caminantes de Humberto Navarro" would be devasting to Defendant financially and emotionally.  If Defendant had to start again with a new band name it would take years to build up a following as big as he currently has, even if that were possible to do so.  Navarro Decl. ¶13.

Accordingly, analysis of these factors validates the strong presumption of laches created by Plaintiffs' delay significantly beyond the analogous statute of limitations period.

### 2. Plaintiffs' Unreasonable Delay Will Cause Defendant Prejudice if the Lawsuit Proceeds

Although laches will not always bar prospective injunctive relief, it is appropriate when an injunction will prejudice the defendant. *See Jarrow Formulas*, 304 F.3d at 840. Courts recognize two forms of prejudice from laches: evidentiary-based prejudice and expectations-based prejudice. *Saul Zaentz,* 627 F.Supp.3d at 1117. Expectations-based prejudice occurs when the defendant takes actions or suffers consequences that he would not have had the plaintiff not delayed.  *Id.*

A defendant can establish expectations-based prejudice by showing that, for example, in reliance on the delay, he invested labor and capital to build a trademark's value or during the delay, he invested money to expand the business or enter transactions based on his presumed rights. *Id.* at 1117-18 (citations omitted). Prejudice may also come from the defendant's forced abandonment of a long-term investment in a mark that is central to his public identity. *See Jarrow Formulas*, 304 F.3d at 840. Significantly, the longer the delay, the more likely that prejudice has occurred and the less proof of prejudice the defendant needs to offer. *Miller*, 318 F.Supp.2d at 944.

As discussed *supra*, Defendant has spent more than 10 years touring as "Los Caminantes HN" or "Los Caminantes de Humberto Navarro."  He has built a successful business, and this is his primary source of income. After so long, Defendant has a solid expectation that he would be allowed to continue to tour without interference from Plaintiffs.  It would be manifestly unfair to allow Plaintiffs to sit in wait for a decade, watch Defendant build up his business, and then sue and collect damages or obtain an injunction to thwart Defendant's long-standing efforts.  Here, Plaintiffs had the opportunity to seek an injunction against Defendant in 2011 but instead dismissed their lawsuit against him.  Plaintiffs cannot simply sit idly by for another 9 years and then sue again.

Furthermore, Defendant has entered into agreements with clubs to perform around the country.  If the court were to grant an injunction, Defendant could be sued by these clubs for breach of contract.  Accordingly, the Court should not issue an injunction because of the extreme prejudice that this would cause Defendant.

### 3.  The Possibility of Future Consumer Confusion is Not Grounds To Grant An Injunction.

Plaintiffs may argue that, even if laches is applicable, the Court should still grant an injunction due to the possibility of "inevitable confusion" between the two bands, and that the public has a right not to be confused by Defendant's use of a similar mark.

However, this identical argument was made and rejected in the *Pinkette Clothing* case.  In that case, the Court held that "the danger of 'inevitable confusion' between products will defeat a successful laches defense only in a narrow set of circumstances. In order to ensure that laches remains a viable defense to Lanham Act claims, the public's interest will trump laches only when the suit concerns allegations that the product is harmful or otherwise a threat to public safety and well-being."  *Pinkette Clothing* at 1029 (quoting *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n,* 465 F.3d 1102, 1111 (9th Cir. 2006).

As there is no plausible argument that Defendant's band is harmful or a threat to public safety and well-being, the doctrine of "inevitable confusion" does not apply and the Court should not grant an injunction if it determines that Plaintiffs is guilty of laches.

### IV.  PLAINTIFFS HAVE ACQUIESCED TO DEFENDANT'S USE OF THE MARK.

In addition to Defendant's laches defense, Plaintiffs should also be barred from bringing suit because of their acquiescence in allowing Defendant to proceed in performing as Los Caminantes de Humberto Navarro HN for more than nine years before filing suit.  "Acquiescence . . . limits a party's right to bring suit following an affirmative act by word or deed by the party that conveys implied consent to another. *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.,* 621 F.3d 981, 988 (9th Cir. 2010).

"The elements of a *prima facie* case for acquiescence are as follows: (1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between

1    the active representation and assertion of the right or claim was not excusable; and (3)

2    the delay caused the defendant undue prejudice." *Id.* at 989.

3         With regard to the first element, the fact that Plaintiffs dismissed the 2011 lawsuit

4    and then took no further steps to enforce the mark against Defendant while instead suing

5    other alleged infringers, is an affirmative act that conveys implied consent.

6         It is not necessary for Defendant to prove that Plaintiffs verbally authorized

7    Defendant to use the mark to show acquiescence.  Acquiescence can be proved merely

8    by Plaintiff's actions (or lack of action).  For example, in *ProFitness Physical Therapy

9    Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.,* 314 F.3d 62 (2d Cir. 2002),

10   the 2nd Circuit held that Plaintiff's failure to respond to letters from the Defendant was

11   deemed an affirmative act showing acquiescence.

12        In the present case, in which Plaintiff dismissed their 2011 lawsuit against Defendant

13   without first requiring Defendant to stop performing under the allegedly infringing

14   name, it would be hard pressed to find a more relevant example of acquiescence, short of

15   a written authorization.

16        With regard to the other two elements required to prove acquiescence (i.e., (a) non-

17   excusable delay, and (b) undue prejudice to Defendant), those elements were previously

18   discussed in this brief.

19        As Defendant has met his burden of showing that Plaintiffs have acquiesced to the

20   use of the mark, motion for summary judgment should be granted on this ground as well.

21

22   **V. PLAINTIFFS' FIFTH CLAIM FOR RELIEF FOR INTERFERENCE WITH PROSPECTIVE

23   BUSINESS ADVANTAGE IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS**

24        The statute of limitations for tortious interference with contract in California is two

25   years. *Kiang v. Strycula*, 231 Cal.App.2d 809, 811–12 (1965); *see* Cal. Civ. Proc. Code §

26   339(1). A tortious interference claim typically accrues "at the date of the wrongful act."

27   *Trembath v. Digardi*, 43 Cal.App.3d 834, 836, 118 Cal.Rptr. 124 (1974).

28

In the present case, Plaintiffs allege that Defendant began his alleged "wrongful act" in September 2011, when he first began touring as "Los Caminantes HN" or "Los Caminantes de Humberto Navarro" and concede that they were aware of his actions almost immediately. Indeed, their 2011 Lawsuit contained a claim for intentional interference with prospective business advantage. But the claim, along with the rest of the lawsuit, was dismissed in 2012. Thus, as Plaintiffs waited more than nine years until November 2020 to renew the claim, there is no question it is time-barred.

Unlike claims for trademark infringement, California has not applied a "continuous accrual" rule to claims for interference with prospective business advantage.

"[U]nder the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." *Aryeh v. Canon Bus. Solutions., Inc.,* 55 Cal. 4th 1185, 1192 (2013).

However, there are no cases that have applied the "continuous accrual" case to claims for interference with prospective business advantage.  In *DC Comics v. Pac. Pictures Corp.,* 938 F. Supp. 2d 941 (C.D. Cal. 2013), DC argued that the court should read the *Aryeh* case as allowing for all common-law tolling doctrines to California-law claims. However, the court disagreed.  "Indeed, the parties cite no cases, and the Court has found none, directly applying either of California's continuing-wrong principles to tortious-interference claims. Undeterred, DC points to a recent California Supreme Court decision, *Aryeh v. Canon Business Solutions, Inc.,* as reflecting that court's "receptiveness to applying all common-law tolling doctrines to plaintiff's California-law claims." (Citation omitted). ***But DC reads Aryeh too broadly*.**" *Id.* at 949 (emphasis added).

Even assuming, *arguendo*, that the Fifth Cause of Action was not barred by the statute of limitations, the claims would be barred by laches for the same reasons as those stated above.

Finally, it must be noted that the Fifth Cause of Action fails to state any actual damages caused by the alleged interference.  The 2020 Complaint states (at ¶85), "Plaintiffs have been damaged by the tortious interference by defendants and each of them with Plaintiffs' economic relations in an amount <u>to be alleged by amendment to this Complaint.</u>" (Emphasis added).  However, Plaintiffs have never amended the Compliant to allege any amount, and, as discussed *supra,* Plaintiffs have not produced any evidence of any economic damages caused by Defendant Martin Navarro.  Accordingly, the Court should grant summary judgment as to the Fifth Cause of Action as well.

## VI.  THE SIXTH CAUSE OF ACTION IS NOT A VIABLE CAUSE OF ACTION

Plaintiffs' Sixth Cause of Action is styled as a claim for "preliminary and permanent injunctive relief." However, injunctive relief is a remedy, not a cause of action. See, e.g., *Roberts v. Los Angeles County Bar Assn.,* 105 Cal.App.4th 604, 618, (2003) (citing *McDowell v. Watson,* 59 Cal.App.4th 1155, 1159, (1997)). *See also Lutz v. CBRE Grp., Inc.,* 2013 WL 4102157, at *9 (S.D. Cal. Aug. 13, 2013).  As Plaintiffs do not actually state a cause of action here, summary judgment is proper.

## VII. CONCLUSION

Plaintiffs initially filed a lawsuit for trademark infringement against Defendant in 2011.  They then inexplicably dismissed the lawsuit and waited another 9 years before filing the present claim.  During this time, Defendant built up his business which has allowed him to travel the country, regularly performing as Los Caminantes de Humberto Navarro to honor his father.  Also, during this time, Plaintiffs filed two lawsuits against <u>other</u> alleged infringers of the Los Caminantes trademark, leaving Defendant out of those

cases, even though it would have been a simple matter to add Defendant to either of those cases if Plaintiffs really believed that Defendants actions were costing it money.

In truth, Plaintiffs have not incurred any damages as a result of Defendant's use of a similar mark as they have not produced the slightest bit of evidence to support a claim for monetary damages.

As it would be manifestly unjust to allow Plaintiffs to proceed with this lawsuit after waiting so long, the Court should find that Plaintiffs are guilty of laches and dismiss all claims made against him.


Dated: July 5, 2022                                    Law Office of Larry Zerner

                                                       By: /Larry Zerner/
                                                       _____
                                                       Larry Zerner
                                                       Attorney for Defendant Martin Navarro