**ERIC BJORGUM (State Bar No. 198392)**
Eric.bjorgum@kb-ip.com
KARISH & BJORGUM PC
119 E. Union Street, Suite B
Pasadena, CA 91103
Telephone:  (213) 785-8070
Facsimile:   (213) 955-5010

Attorneys for Plaintiffs
Agustin Ramirez, Anthony Ramirez
and Agustin Ramirez, Jr.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AGUSTIN RAMIREZ, ANTHONY RAMIREZ and AGUSTIN RAMIREZ, JR.<br><br>Plaintiffs,<br><br>vs.<br><br>MARTIN NAVARRO and DOES 1 - 10, inclusive,<br>Defendants. | Case No. 20-cv-02408-SP<br><br>**PLAINTIFFS' <u>REFILED</u> NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  November 22, 2022<br>Time: 10:00 a.m.<br>Judge: Sheri Pym<br>Courtroom: 3<br>Place: George E. Brown Jr. Federal Building<br>3470 12th St., Riverside, CA 92501 |

1
PLAINTIFFS' REFILED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on November 22, 2022, at 10:00 A.M. or as soon thereafter as the matter may be heard, in Courtroom 3 of the above-entitled court, located at the George E. Brown, Jr. Federal Building, 3470 12th St., Riverside, CA 92501, 3rd Floor. Plaintiffs AGUSTIN RAMIREZ, ANTHONY RAMIREZ, and AGUSTIN RAMIREZ, JR., will, and hereby do, bring a motion for summary judgment on their claim for trademark infringement and related claims, as well as their claim for interference with prospective economic advantage and request for injunctive relief regarding the LOS CAMINANTES trademark. Plaintiff Agustin Ramirez, Sr. has spent his adult life building the brand for the LOS CAMINANTES performing music group. In that last ten years, he has filed multiple federal cases and obtained injunctions that have gone largely ignored. Defendant Martin Navarro – the son of a former band member – cynically asserts that while Plaintiff may have pursued cases against other infringers, he has waited too long to sue Navarro, so that Navarro and everyone working with him are free to destroy Plaintiff's life work. Navarro has had a chance to prove his case, and he has failed miserably. It is time for this Court to put this to end.

The motion is made pursuant to Rule 56(c) of the Federal Rules of Civil Procedure upon the grounds that there is no genuine issue of any material fact as to ownership of the LOS CAMINANTES trademarks and that Plaintiffs' are entitled to judgment as a matter of law.

The motion for summary judgment shall be based upon this notice, the memorandum of points and authorities, the accompanying statement of undisputed facts and conclusions of law, the accompanying declarations, the accompanying request for judicial notice, the proposed order and the arguments of counsel and such other matters as may be presented to the Court at the hearing on the motion.

A proposed order and factual findings and conclusions of are lodged separately herewith.

This motion is made following the L.R. 7-3 conference of counsel which took place on March 4, 2022.

Dated:  October 18, 2022                Respectfully submitted,


By: /s/ Eric Bjorgum
A. Eric Bjorgum
KARISH & BJORGUM PC
Attorneys for Plaintiffs
Agustin Ramirez, Anthony Ramirez
and Agustin Ramirez, Jr.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii
MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1
I.   INTRODUCTION ........................................................................................... 1
II.  STATEMENT OF FACTS .............................................................................. 3
   A.   The Origins of the LOS CAMINANTES Mark ........................................ 3
   B.   After Humberto Navarro's Death ............................................................. 4
III. ARGUMENT ................................................................................................... 7
   A.   Navarro Is Liable for Trademark Infringement Under State and Federal Law ............................................................................................................. 7
     1.   The Standard for Trademark Infringement and Related Claims ........ 7
     2.   Navarro Has Infringed the Trademark ................................................ 9
   B.   Navarro Is Liable for Intentional Interference with Prospective Economic Advantage. ................................................................................................ 11
   C.   The Court Should Enter An Injunction ................................................... 11
IV.  CONCLUSION .............................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Agustin Ramirez, Anthony Ramirez and Agustin Ramirez, Jr. v. Vicente Martinez and Juan Manuel Navarro*, U.S. Dist. Court, Cent. Dist. of Cal., Case No. 5:2017-cv-0221-FMO (GJSx) ........................................................................................... 7

*Agustin Ramirez, Anthony Ramirez, Agustin Ramirez, Jr. v. Mario Sotelo, Ricardo Tarazon, Jorge Guzman and Juan Antonio Sotelo*, Case No. 5:13-cv-02155-SJO-MRW ................................................................................................... 6, 7, 11, 12

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) ........................ 10

*Applied Info. Scis. Corp v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007) ............... 10

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999) ................................................................................................................. 11, 12

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 1839 (2006) ............................................................................................................................ 14

*Entrepreneur Media, Inc. v. Smith*, 2004 U.S. Dist. LEXIS 24078, *13 .................. 10

*Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1031-32 (C.D. Cal. 2011), aff'd, 738 F.3d 1085 (9th Cir. 2013) ........................................................ 11

*Jockey Club, Inc. v. Jockey Club of Las Vegas, Inc.*, 595 F.2d 1167, 1168 (9th Cir. 1979) ..................................................................................................................... 15

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir. 2014) ..................................................................................................................... 14

*Network Automation, Inc. v. Advanced Sys.* ........................................................... 10

*New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) ..................................................................................................................... 11

*Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993) ................ 12

*Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) ............... 14

*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.*, 2 ............................... 13

1  *Silva v. Campillo*, 2015 WL 12670203, *3 (C.D. Cal. 2015) .................................... 13

2  *Smith v. Chanel, Inc.*, 402 F.2d 562, 563 (9th Cir. 1968) ........................................... 11

3  *Stork Restaurant v. Sahati*, 166 F.2d 348, 359 (9th Cir. 1948) .................................... 9

4  *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 974, 2016 U.S. App. LEXIS 15792, *32-

5  33 ............................................................................................................................. 10

6  *Urban Home, Inc. v. Cordillera Inv. Co., LLC*, 2014 WL 3704031, *4 (C.D. Cal.

7  2014) ........................................................................................................................ 12

**Other Authorities**

10  1 McCarthy on Trademarks & Unfair Competition § 2:1 (4th ed. 2013) ................... 9

11  15 U.S.C. § 1115(a) .................................................................................................. 10

12  15 U.S.C. § 1116(a) .................................................................................................. 14

13  Cal. Bus. & Prof. Code § 14401 ............................................................................... 14

14  Cal. Bus. & Prof. Code § 14402 ............................................................................... 14

15  Cal. Bus. & Prof. Code § 14415 ............................................................................... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

If trademark law and the federal Lanham Act are to mean anything, Plaintiffs here must prevail on this motion. This is the third case they have filed against infringers of their famous band's name – LOS CAMINANTES. They already obtained permanent injunctions founded on well-reasoned opinions from respected judges of this District (Hon. S. James Otero and Hon. Fernando Olguin), yet the Defendants in those matters continue to infringe, and the current Defendant is certainly emboldened to continue doing so. This may be because Plaintiffs' former attorney passed away unexpectedly in 2020, or it may be because lead Plaintiff Agustin Ramirez, Sr. (the founder of LOS CAMINANTES) has been ill and performing only intermittently for the last two years, thus leaving market demand to be filled by unscrupulous performers.

However, regardless of the reason for the burgeoning infringement of the LOS CAMINANTES mark, it needs to stop. Plaintiff Agustin Ramirez, Sr, is the founder and lead singer of Los Caminantes, based in San Bernadino County, which has released 30 albums of original material and recorded over 300 songs – all featuring Ramirez's voice. Originally composed of brother from of the Ramirez family, the band now features Agustin Ramirez and his son Agustin Ramirez, Jr. on guitar since 2010 and Anthony Ramirez on drums (since 2011). Following the death of former drummer Humberto Navarro in 2011, Anthony stepped in on drums, and these three individuals (Plaintiffs here) filed for a received a trademark registration in 2012 on LOS CAMINANTES for live musical performances.

Defendant Martin Navarro is the son of Humberto Navarro, and, against all precedent, claims to have inherited both his father's trademark rights and the attendant goodwill associated with the trademark. He has played drums with

Vicente Martinez (a young soundalike singer copying Agustin, Sr.) and one of the Defendants in a prior case who is violating an injunction. He is also aware of the case against Mario Sotelo (also under and injunction), another former member of Los Caminantes.

Martin Navarro has tried to register three separate trademarks using "Los Caminantes": LOS CAMINANTES HN, LOS CAMINANTES H.N. and LOS CAMINANETES INC. Each application was rejected because of confusion with Plaintiff's registration or application. Despite clear likelihood of confusion, and all of the work by the Ramirez family, their attorneys and judges in this District, Martin Navarro continues to brazenly perform around the country.

Plaintiffs did not bring this case lightly. They had to find an attorney willing to wade into this situation, and they know the costs of litigation. Before filing suit, counsel sent multiple cease and desist letters to clubs and promoters around the United States including the injunctions and demanding that no pirate bands be allowed to play. Counsel got no response, so this suit was filed.

Further, as can be seen by the papers accompany this motion, Agustin Ramirez, Sr. has already submitted two lengthy declarations explaining this history of his band. Each of these had to be translated by a certified translator, as did many of the Exhibits. Those exhibits and declarations were relied upon by Judge Otero and Judge Olguin in making detailed factual findings. Judge Otero's opinion was affirmed by the Ninth Circuit. Plaintiff has submitted those materials with a Request for Judicial Notice because there is no need for Plaintiffs to incur the costs of preparing everything again. The Judges of this District have weighed in extensively on the breadth of their rights.

The only thing different about this case is Martin Navarro, the son of Humberto Navarro, and his claim of laches, which is being separately briefed by his attorney. However, it is clear in this matter that Martin Navarro's defense of undue

delay ignores both his unclean hands in laying in wait while other litigation played out, and his progressive encroachment upon the mark as Agustin Ramirez has been aging. These issues will be fully brief in the Plaintiffs' Opposition to Defendants' Motion for Summary Judgment.

## II.  STATEMENT OF FACTS

### A.  The Origins of the LOS CAMINANTES Mark

Plaintiff Agustin Ramirez, Sr. ("Agustin") has played with Los Caminantes since its inception in the mid-1970s. (SUF, ¶ 1.) The original group consisted of Agustin Ramirez, Sr. ("Ramirez") with his brothers Brigido Ramirez ("Brigido"), Horacio Ramirez ("Horacio"), and Martin Ramirez ("Martin") in Bloomington, California. Los Caminantes has recorded over 30 albums with Ramirez as its lead singer, and has performed throughout the United States and Mexico. Since the group's founding, Ramirez has been its lead singer and spokesman, and is currently the sole remaining original member of the group. (SUF, ¶ 2.) Ramirez is the only member of the original group still with the group. (SUF, ¶ 2.)

Since the group's inception, the "Los Caminantes" mark has been used in print advertising and on the covers of the group's recordings in the same distinctive, cursive style still in use today. (SUF, ¶ 3).

Defendant Martin Navarro's farther Humberto was the drummer in Los Caminantes between approximately 1984 and his death in 2011. SUF, ¶ 4.). In 2006, trademark registration U.S. Reg. No. 3,129,214 issued for LOS CAMNANTES in International Class 9 for a series of prerecorded music and video. The owner was "Losa Caminantes partnership composed of Humberto Navarro and Agustin Ramirez, both citizens of Mexico." (SUF, ¶ 8.). That registration was abandoned and later cancelled on March 23, 2013. (SUF 9.)

Ramirez's sons are part of the band. Agustin Ramirez, Jr. has played guitar in

the band since 2010. (SUF, ¶ 7.) His son Anthony has been the drummer since 2011. (SUF, ¶ 6.) Together, the Ramirez family has continuously used the name in connection with goods, i.e., records and sound recordings, and live performances,, and is the owner of the federally registered service mark, "Los Caminantes," Reg No. 4,410,019, for "entertainment in the nature of live performances by a musical group, in Class 41[.]"(SUF, ¶ 8.)

### B. After Humberto Navarro's Death

As Humberto Navarro became ill at the beginning of June 2011, his son, defendant Martin Navarro, took his place as the drummer for the live performances of "Los Caminantes." Over the ensuing weeks, defendant Martin Navarro continued to perform with "Los Caminantes." Humberto Navarro passed away in November 2011. (SUF, ¶ 4.)

Within a year of his father passing away, Martin Navarro attempted to use the name LOS CAMINANTES and has performed under that name or LOS CAMINANTES H.N. or LOS CAMINANTES de HUMBERTO NAVARRO. (SUF, Plaintiffs here filed suit against Martin Navarro for trademark infringement in 2011. Navarro counterclaimed. That suit was later dismissed without prejudice, per stipulation. Plaintiffs were told that suit was dismissed because the attorneys did not like the Judge. (SUF, ¶ 11.) On October 30, 2012, Plaintiffs filed an application to register LOS CAMINANTES, which application issued to registration on October 1, 2013 as Registration No. 4,410,019. (SUF, ¶ 8.)

**The Subsequent Litigations**

Following the death of Humberto Navarro there have been multiple litigations regarding use of the LOS CAMINANTES mark. All of them have been filed by Plaintiffs here. On September 27, 2011, Agustin Ramirez filed suit against Defendant Martin Navarro for federal trademark infringement and unfair

competition, dilution, disparagement, dissolution of partnership, fraud and other business torts. Navarro answered and counterclaimed, and the parties dismissed all claims without prejudice soon thereafter. (SUF 11.)

In November, 2013, Ramirez also filed suit against another former member, in a suit entitled *Agustin Ramirez, Anthony Ramirez, Agustin Ramirez, Jr. v. Mario Sotelo, Ricardo Tarazon, Jorge Guzman and Juan Antonio Sotelo*, Case No. 5:13-cv-02155-SJO-MRW. That case resulted in a permanent injunction, which provided, *inter alia*:

> Defendants, their officers, employees, agents, owners, partners and all persons in active concert and participation with any of them who receive notice of this Court's order, by personal service or otherwise, are permanently enjoined and restrained from using the name "Los Caminantes" or "Caminantes" or any similar form of the name, including without limitation "xCaminantes," "Caminantes Para Siempre" or any similar or derivative form of the name "Caminantes," in connection with the advertisement, marketing, promotion, or performance of live performances by any Defendant, except to the extent that nominative fair use applies. Thus, Defendants may state that they used to perform with Los Caminantes as a description of past musical performance experience.

(SUF, ¶ 12.)

The Ninth Circuit has upheld the preliminary injunction order on that case in Case. No. 14-55571 on December 5, 2014. (SUF, ¶ 15.)

On October 27, 2017, Plaintiffs filed a suit against Vicente Martinez (the former singer in Defendant Navarro's band), Angel Juarez and Juan Manuel Navarro for trademark infringement of the LOS CAMINANTES mark and related

claims. (SUF, ¶ 16.) On August 19, 2019, Hon. Fernando M. Olguin of this District issued a lengthy order granting Plaintiffs' Motion for Summary Judgment and Default Judgment, ordering damages of $77,654 against Juan Manuel Navarro and enjoining both Martinez and J.M. Navarro from further use of the LOS CAMINANTES. (SUF, ¶ 17.) Martin Navarro, the Defendant here, was aware of both of those cases. (SUF, ¶ 18.)

Despite all of this litigation, including judgments and injunctions finding that Agustin Ramirez and his family are the owners of the LOS CAMINANTES trademark, Defendant Navarro persisted. In 2016 and 2018, Martin Navarro attempted to register the trademarks LOS CAMINANTES H.N and LOS CAMINANTES HN. Both were found to be confusing with Plaintiff's LOS CAMINANTES registration, and both of the "HN" applications have been abandoned. (SUF, ¶ 19.)

Unfortunately, the family's long-time attorney Steve Eyre passed away in 2020. (SUF, ¶ 20.) Ramirez, Sr. had a heart issue and did not perform for most of 2021. Ramirez did play shows in late 2021, and plans to begin touring again in May, 2022 (following a freak accident that perforated his liver.) Infringing uses of this band name grew.

Navarro has also re-recorded Los Caminantes songs using the same music from the original recordings. (*See* Declaration of Agustin Ramirez, Jr., at ¶ ¶ 8 – 9.) Plaintiff Agustin Ramirez, Jr. has contacted iTunes and related entities to stop alleged infringement of his father's copyrights. (*Id.* at ¶ 8.) It appears that in the last two years, at least three unauthorized bands have performed using LOS CAMINATES: Defendant Navarro's "Los Caminantes H.N.," Sotelo's "Los Caminanantes" or "Los Caminantes Chulos Chulos Chulos," and Vicente Martinez's "Los Caminantes." Martinez and Sotelo have not abided by the injunctions against them, and Navarro is aware of their cases.

In each of the last two years, Navarro has engaged in widespread touring. The situation has become intolerable. Plaintiffs' new counsel sent cease and desist letters, but none of the clubs complied. (Declaration of Eric Bjorgum, Exh. J.) As can be seen by the ads that have been used, it is nearly impossible to determine which bands are performing. (Bjorgum Decl., Exh. D; Ramirez, Jr. Decl., Exh. B.) Further, Plaintiffs have had to lower their price per concert by approximately $2,000. (Ramirez, Jr. Decl., ¶ 12.)

## III. ARGUMENT

### A. Navarro Is Liable for Trademark Infringement Under State and Federal Law

#### 1. The Standard for Trademark Infringement and Related Claims

The purpose of trademark law is to "[p]rotect property in the trademark and protect consumers from confusion." J. Thomas McCarthy, 1 McCarthy on Trademarks & Unfair Competition § 2:1 (4th ed. 2013). As one court somewhat pejoratively noted, the trademark laws are not primarily designed to protect careful and experienced consumers, but to protect "the gullible." *Entrepreneur Media, Inc. v. Smith,* 2004 U.S. Dist. LEXIS 24078*, *13* (quoting *Stork Restaurant v. Sahati*, 166 F.2d 348, 359 (9th Cir. 1948)). In that case, the Court found that will full knowledge of Plaintiff's mark, the Defendant adopted a similar name. The Court concluded that. "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Entrepreneur Media*, 279 F.3d at 1148.

To state a claim for trademark infringement, plaintiffs must show that: (1) they have a valid, protectable trademark; and (2) defendant's use of the mark is likely to cause confusion. *See Applied Info. Scis. Corp v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). Evidence of a registered trademark "shall be prima facie

evidence of the validity of the registered mark and . . . of the registrant's ownership of the mark[.]" 15 U.S.C. § 1115(a). Registration "discharges the plaintiff[s'] original common law burden of proving validity in an infringement action." *Applied Info.,* 511 F.3d at 970. Here, plaintiffs have put forth undisputed evidence that they own a valid, protectable trademark for LOS CAMINANTES. They have shown a valid trademark registration (SUF, ¶ 8) and two written opinions by Judges in this District upholding their trademark rights. (SUF, ¶¶ 13, 17.)

Regarding likelihood of confusion, courts usually consider eight factors known as the *Sleekcraft* factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011) (citing *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979)). "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific. Although some factors – such as the similarity of the marks and whether the two [entities] are direct competitors – will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

The court analyzes plaintiff's trademark infringement and related state and federal claims together. As one court in this District stated:

> Moreover, the courts have uniformly held that common law and statutory trademark infringement are merely specific aspects of unfair competition. *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979). Under the Lanham Act, the ultimate test is

whether the public is likely to be deceived or confused by the similarity of the marks. *Smith v. Chanel, Inc*., 402 F.2d 562, 563 (9th Cir. 1968). "Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical- is there a 'likelihood of confusion?'" New West Corp., 595 F.2d at 1201. *Hokto Kinoko Co. v. Concord Farms, Inc*., 810 F.Supp.2d 1013, 1031-32 (C.D. Cal. 2011), aff'd, 738 F.3d 1085 (9th Cir. 2013); *New W. Corp. v. NYM Co*. of Cal., 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical[:] is there a 'likelihood of confusion?'").

### 2. Navarro Has Infringed the Trademark

Here, a weighing of just a few of the *Sleekcraft* factors supports a finding that Navarro's use of plaintiffs' mark causes consumer confusion.  Two Courts have already held that the Mark is strong because it is "is not suggestive or descriptive of a musical group" and is thus "arbitrary and entitled to maximum trademark protection." *Ramirez v. Sotelo,* 2014 WL 12599799, *4 (C.D. Cal. 2014) ("Ramirez I"); *Ramirez v. Martinez et al.,* Case No. 17-2211 FMO (GJSx) (*"Ramirez II"*).

The Marks are also similar.  They both prominently feature the phrase LOS CAMINANTES, and both in a cursive style.  In fact, when Defendant attempted to register the following logo, the USPTO found it to be confusing with Plaintiff's Mark.



(SUF, ¶ 19.)

As Judge Otero noted in the *Martinez* case, both marks were "in the same

1 cursive style" and that Defendant was "at times adding other inconspicuous
2 elements, such as "International." *Ramirez II,* ("While not identical, Defendants
3 have occasionally also used nearly identical alternative names like 'Caminantes" or
4 "x Caminantes.' Given the high degree of similarity between these alternative names
5 and Plaintiffs' trademark, the use of these names does not shift this factor towards
6 Defendants."); *Urban Home, Inc. v. Cordillera Inv. Co., LLC*, 2014 WL 3704031,
7 *4 (C.D. Cal. 2014) (finding plaintiff's mark "URBAN HOME" similar to
8 defendant's marks "Urban Home" "Urban Leather" and "Urban Home and Office"
9 for purposes of motion to dismiss).

10       Under the second *Sleekcraft* factor, proximity of goods, "[r]elated goods are
11 more likely than non-related goods to confuse the public as to the producers of the
12 goods." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993).
13 Here, Plaintiffs and Defendants "are using the mark 'Los Caminantes' to advertise
14 and to perform Latin music.

15       Further, Plaintiffs have had actual confusion.  (SUF, ¶ 24.)

16       In short, four *Sleekcraft* factors: (1) the strength of the mark; (2) the proximity
17 of the goods; (3) the similarity of the marks; and (4) actual consumer confusion are
18 enough, under the circumstances here, for the court to find a likelihood of confusion.
19 See *Brookfield Commc'ns*, 174 F.3d at 1054 ("Although some factors – such as the
20 similarity of the marks and whether the two companies are direct competitors – will
21 always be important, it is often possible to reach a conclusion with respect to
22 likelihood of confusion after considering only a subset of the factors."); *Silva v.*
23 *Campillo*, 2015 WL 12670203, *3 (C.D. Cal. 2015) (finding Sleekcraft factors
24 supported finding of consumer confusion when defendants' marks incorporated
25 words "La Luz Roja" in their advertisements and offered a similar product – live
26 performances by a musical group).

27       For these reasons, the Court should find for Plaintiffs on the claim of
28

trademark infringement and related claims.

### B. Navarro Is Liable for Intentional Interference with Prospective Economic Advantage.

By playing at the same venues and for the same audiences as Plaintiffs, Navarro is also liable for intentional interference with prospective economic advantage. The five elements of interference with prospective economic advantage are: (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action. *Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.*, 2 Cal.5th 505, 512, 213 Cal.Rptr.3d 568, 388 P.3d 800 (2017).

These elements are met here. The parties play at the same clubs. (SUF, ¶¶ 22 – 23.) Obviously Navarro knew about that those relationships because he played those clubs with the band and has worked with promoters who know this market. There has been actual harm because Plaintiffs' have been forced to lower their rate for a concert. (SUF, ¶ 25.)

### C. The Court Should Enter An Injunction

Under the Lanham Act, courts have the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right" of the trademark owner. 15 U.S.C. § 1116(a); *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). A plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

11
PLAINTIFFS' REFILED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 1839 (2006). "[T]raditional principles of equity" demand a fair weighing of the factors, taking into account the unique circumstances of each case. Id. at 394, 126 S.Ct. at 1841; *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir. 2014) ("While the decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, the traditional principles of equity demand a fair weighing of the factors listed above, taking into account the unique circumstances of each case.") (internal quotation and alteration marks omitted). Similarly, under the California Business and Professions Code § 14402, "any court of competent jurisdiction may restrain, by injunction, any use of trade names in violation of the rights defined in this chapter." "In both trademark and trade name cases, the test of infringement is whether a likelihood of confusion exists." *Jockey Club, Inc. v. Jockey Club of Las Vegas, Inc.*, 595 F.2d 1167, 1168 (9th Cir. 1979).

Here, an injunction must issue. Plaintiffs have tried everything in their power to stop this infringement. Two injunctions were entered before this case was filed, and Navarro knew about them. (SUF, ¶ 18.) He also attempted to obtain trademark registrations three times and was rejected because of Plaintiffs' registration. (SUF, ¶ 19.) Still he persisted in using LOS CAMINANTES, H.N. The market is now flooded with three illegal bands. Plaintiff's rates have declined. This band has been the life work of Agustin Ramirez. It is only fair that its value not be destroyed by people who do not even recognize the efficacy of the Court system.

Both Judge Otero and Judge Olguin have issued injunctions under nearly identical circumstances, involving nearly the same marks. Judge Otero found irreparable harm *twice* – once at the TRO stage, and once at the preliminary

1  injunction stage.  (RJN, Exhs. 2, 4.)  Judge Olguin later reached the same
2  conclusions.  (RJN, Exh. 8 at 9-11.)  Defendant Martin Navarro should be ordered to
3  stop performing live under the name LOS CAMINANTES, LOS CAMINANTES
4  H.N or anything similarly confusing. Enough is enough, and he has had his chance
5  to make his case.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment Should be Granted and an injunction entered.

Dated:  October 18, 2022          Respectfully submitted,

By: */s/ Eric Bjorgum*
A. Eric Bjorgum
KARISH & BJORGUM PC
Attorneys for Plaintiffs
Agustin Ramirez, Anthony Ramirez
and Agustin Ramirez, Jr.