Larry Zerner (155473)
Law Office of Larry Zerner
1801 Century Park East. Ste. 2400
Los Angeles, CA 90067
Telephone: (310) 773-3623
Email: Larry@Zernerlaw.com

Attorneys for Defendant Martin Navarro

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AGUSTIN RAMIREZ, ANTHONY RAMIREZ and AGUSTIN RAMIREZ, Jr. <br><br> Plaintiffs, <br><br> vs. <br><br> MARTIN NAVARRO and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 5:20-cv-2408 SP <br><br> **DEFENDANT'S OPPOSITION TO PLAINTIFFS' REFILED MOTION FOR SUMMARY JUDGMENT** <br><br> Date: December 6, 2022 <br> Time: 11:00 a.m. <br> Courtroom: 3 <br><br> Trial Date: February 27, 2023 <br> Pre-Trial Conference: February 14, 2023 <br> Discovery Cut-Off: March 4, 2022 |

i

## Table Of Contents

I. INTRODUCTION ...................................................................................................1
II. PLAINTIFFS' TRADEMARK CLAIMS ARE BARRED BY LACHES...............2
IV.     GENUINE ISSUES OF MATERIAL FACT EXIST WITH RESPECT TO PLAINTIFFS' TRADEMARK INFRINGEMENT CLAIM ........................................3
   A.  PLAINTIFFS HAVE FAILED TO ESTABLISH THE VALIDITY OF THE MARK THEY SEEK TO ENFORCE. ...................................................................................................................... 4
   B.  PLAINTIFFS FAIL TO PRESENT ADMISSIBLE EVIDENCE SHOWING A LIKELIHOOD OF CONFUSION. ................................................................................................................... 5
      1. Plaintiffs Provide No Admissible Evidence on the Similarity of the Marks............ 6
      2. Plaintiffs Provide No Admissible Evidence of the Strength of the Mark ................ 7
      3. Plaintiffs Provide No Evidence of the Proximity or Relatedness of Goods or Services. ........................................................................................................................ 8
      4. Plaintiffs Provide No Evidence of Actual Confusion ................................................ 8

V.    GENUINE ISSUES OF MATERIAL FACT EXIST WITH RESPECT TO PLAINTIFFS' INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE CLAIM ...................................................................................... 10
   A.  PLAINTIFFS PROVIDE *NO EVIDENCE* TO SUPPORT THEIR INFERENCE CLAIM ............. 10
   B.  PLAINTIFFS' INTERFERENCE CLAIM IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS ............................................................................................................... 12

VI. PLAINTIFFS' CAUSE OF ACTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF IS NOT A VIABLE CAUSE OF ACTION 13
VII.  CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**CASES**

*Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 880 (9th Cir. 2007) .......................... 6, 7
*Crown Imports, LLC v. Superior Court*, 223 Cal.App.4th 1395, 1404 (2014). ............ 10, 11
*Design Strategy, Inc. v. Davis,* 469 F.3d 284, 295–96 (2d Cir. 2006). ................. 10
*Fortune Dynamic, Inc, v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1031 (9th Cir. 2010). ................................................................................................. 3, 5
*Glow Indus. v. Lopez*, 273 F. Supp. 2d 1095, 1115 (C.D. Cal. 2003). ................. 3, 7
*Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1110  (9th Cir. 1999) ........... 6
*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 835 (9th Cir. 2002). ............... 2
*Kiang v. Strycula*, 231 Cal.App.2d 809, 811–12 (1965); ......................................... 12
*Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) .......................... 3
*Lutz v. CBRE Grp., Inc.,* 2013 WL 4102157, at *9 (S.D. Cal. 2013). ................. 13
*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1027 (9th Cir. 2018)...2, 3
*Roberts v. Los Angeles County Bar Assn.,* 105 Cal.App.4th 604, 618, (2003) .................... 13
*Thane Int'l v. Trek Bicycle Corp.*, 305 F.3d 894, 901-02 (9th Cir. 2002) ............................. 5
*The Saul Zaentz Co. v. Wozniak Travel, Inc.,* 627 F.Supp.2d 1096, 1109 (N.D. Cal. 2008). .................................................................................................... 2
*Trembath v. Digardi*, 43 Cal.App.3d 834, 836, 118 Cal.Rptr. 124 (1974). .......................... 12

**STATUTES**

15 USCA § 1058 ............................................................................................................. 5
37 C.F.R. § 2.160 ............................................................................................................ 5
Cal. Civ. Proc. Code § 339(1). ..................................................................................... 12

**TREATISES**

2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 11.83 (4th ed. 2002 ................................................................. 9

# I. INTRODUCTION

Plaintiffs Agustin Ramirez, Anthony Ramirez, and Agustin Ramirez, Jr. ("Plaintiffs") ask this Court to enjoin Defendant Martin Navarro ("Defendant") from making use of a name his band has embodied for more than a decade. After watching and waiting all those years, Plaintiffs now claim that Defendant has infringed their trademark and interfered with their prospective business relationships. However, Plaintiffs have produced virtually no evidence to support their untimely claims.

Plaintiffs' federal and state trademark claims are barred by the doctrine of laches. By their own admission, Plaintiffs have been aware of Defendant's alleged infringing conduct since 2011. In fact, they sued him at that time in a virtually identical lawsuit. But they dismissed the suit in 2012 and took no further legal action against Defendant until filing the present lawsuit in 2020, more than nine years later.

Further, even if Plaintiffs' trademark claims were not time-barred, genuine issues of material fact exist. They have presented ***no evidence*** on a majority of the *Sleekcraft* factors for determining likelihood of confusion. This alone is fatal to their Motion for Summary Judgment ("Motion"). Moreover, the evidence they do offer mainly consists of findings in prior lawsuits against different defendants to which Defendant was not a party or in privity with any party. Offensive collateral estoppel cannot be invoked against Defendant under these circumstances.

Finally, Plaintiffs' intentional interference with prospective business advantage claim is barred by the two-year statute of limitations. Additionally, even if the claim was not barred, Plaintiffs have presented ***no evidence*** to support any element of intentional interference. This too is fatal.

Accordingly, Plaintiffs' Motion should be denied.

## II. PLAINTIFFS' TRADEMARK CLAIMS ARE BARRED BY LACHES.[1]

Laches is a well-established defense to Lanham Act claims. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). Laches is also an available defense to state law trademark infringement and dilution claims. *Id.* at 842-43; *The Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F.Supp.2d 1096, 1109 (N.D. Cal. 2008). Moreover, laches is a bar to both monetary and injunctive relief. *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1027 (9th Cir. 2018).

A laches defense will apply if a defendant shows both that the plaintiff's delay in filing suit was ***"unreasonable,"*** and that the defendant ***"would suffer prejudice"*** from the delay if the suit continues. *Saul Zaentz*, 627 F. Supp. 2d at 1108-09. The standard for laches under federal and California law are "substantially similar." *Jarrow Formulas*, 304 F.3d at 842.

The Ninth Circuit has established a set of factors to guide the court's analysis of the "delay and prejudice," including: (1) the strength and value of the trademark rights asserted; (2) plaintiff's diligence in enforcing its mark; (3) the harm to plaintiff if relief is denied; (4) good faith ignorance by defendant; (5) competition between plaintiff and defendant; and (6) the harm suffered by defendant because of the delay. *Pinkette Clothing*, 894 F.3d at 1025 (citing *E-Sys., Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983)).

Here, Plaintiffs' delay of ***more than nine years*** before filing this lawsuit was unreasonable. Plaintiffs admit that they first knew in 2011 of Defendant's alleged wrongful conduct, i.e., performing with his band under a name Plaintiffs claim violates

---

[1] The bases of Defendant's laches defense are more thoroughly detailed in his pending Motion for Summary Judgment or, in the Alternative, Summary Adjudication, which is incorporated herein by reference.

their trademark. (Complaint ¶31.) Since their near-decade delay in pursuing their claims against Defendant is more than twice the analogous four-year statute of limitations, a strong presumption of laches applies. *See Pinkette Clothing,* 894 F.3d at 1025 (applying "strong presumption of laches" when plaintiff delayed even one year beyond the four-year statute).

Defendant has thoroughly briefed the issue of laches in his Motion for Summary Judgment which was filed simultaneously with Plaintiff's Motion. Rather than repeating the arguments here, Defendant incorporates them herein by reference.

## IV.  GENUINE ISSUES OF MATERIAL FACT EXIST WITH RESPECT TO PLAINTIFFS' TRADEMARK INFRINGEMENT CLAIM[2]

A court must review the evidence presented on a motion for summary judgment in the light most favorable to the nonmoving party. *See Fortune Dynamic, Inc, v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1031 (9th Cir. 2010). Summary judgment is improper if there are "any genuine issues of material fact," *i.e.*, facts that could affect the outcome of the case. *Id.* (citation omitted).

To prove infringement, a trademark plaintiff must show both that: (1) he has a protectible ownership interest in the mark and (2) the defendant's use of the mark is "likely to cause customer confusion" and thus infringe upon that interest. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985); *Glow Indus. v. Lopez*, 273 F. Supp. 2d 1095, 1115 (C.D. Cal. 2003).

---

[2] As set forth in Defendant Martin Navarro's Motion for Summary Judgment, or in the Alternative, Summary Adjudication filed July 12, 2022, all Plaintiffs' trademark claims are barred by the doctrine of laches.

### A. PLAINTIFFS HAVE FAILED TO ESTABLISH THE VALIDITY OF THE MARK THEY SEEK TO ENFORCE.

Plaintiffs rely on only three pieces of evidence to establish the validity of the mark: (1) a trademark registration; (2) a court's decision in a case to which Defendant was not a party or in privity with any party; and (3) a stipulated permanent injunction in a case to which Defendant was also not a party or in privity with a party. All are faulty.

With regard to the trademark registration, Plaintiffs failed to present evidence that the trademark is still in good standing. Plaintiffs' trademark was registered October 1, 2013. Like all trademarks, it would be cancelled unless a declaration of continued use was filed no later than the sixth anniversary after the date of registration. 15 USCA § 1058, 37 C.F.R. § 2.160. Accordingly, Plaintiffs' trademark would have been canceled as of October 1, 2019, if Plaintiffs did not file the appropriate declaration. However, Plaintiffs' Motion is devoid of evidence that they filed the declaration or that the trademark is still in good standing. Accordingly, Plaintiffs have not met their burden of showing that the mark is valid.

Further, Plaintiffs are collaterally estopped from offering documents from prior lawsuits brought against different defendants as evidence of trademark validity in this case against Defendant. Collateral estoppel has a dual purpose of protecting litigants from the burden of relitigating an identical issue ***"with the same party or his privy"*** and promoting judicial economy by preventing needless litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) (emphasis added); *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 880 (9th Cir. 2007). Defensive collateral estoppel precludes a plaintiff from relitigating identical issues by merely switching adversaries and incentivizes the plaintiff to join all potential defendants in the first action. *Parklane Hosiery*, 439 U.S. at 329; *Collins*, 505 F.3d at 881. Conversely, offensive collateral estoppel provides "precisely the opposite incentive." *Id*.

With both uses of collateral estoppel, the party against whom estoppel is asserted ***"has litigated and lost in an earlier action."*** *Parklane Hosiery*, 505 F.3d at 326; *Collins*, 505 F.3d at 881. Thus, one requirement for application of offensive collateral estoppel is that the party against whom collateral estoppel is asserted ***"was a party or in privity with a party in the prior action."*** *Collins*, 505 F.3d at 882 n. 8. (citation omitted).

Here, Defendant is not bound by determinations in Plaintiffs' prior trademark actions against other defendants because he was not a party to those actions or in privity with those defendants. Plaintiffs do not contend otherwise. Moreover, although Plaintiffs mischaracterize the prior case documents as "written opinions," the permanent injunction in *Ramirez v. Soleto* was "based on the stipulation of the parties" (Bjorgum Decl., Ex. B).

## B. PLAINTIFFS FAIL TO PRESENT ADMISSIBLE EVIDENCE SHOWING A LIKELIHOOD OF CONFUSION.

The Ninth Circuit has referred to "likelihood of confusion" as the "core element" of trademark infringement. *Fortune Dynamic*, 618 F.3d at 1030 (citation omitted). Likelihood of confusion is a "factual determination." Thus, courts should grant summary judgment on the issue only ***"sparingly."*** *Thane Int'l v. Trek Bicycle Corp.*, 305 F.3d 894, 901-02 (9th Cir. 2002). Eight factors guide the likelihood of confusion determination (the "*Sleekcraft* factors"): (1) similarity of the marks; (2) strength of plaintiff's mark; (3) proximity or relatedness of goods or services; (4) defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) marketing channels used; (7) likelihood of expansion into other markets; and (8) degree of care likely to be exercised by purchasers of defendant's product. *Fortune Dynamic*, 618 F.3d at 1030.

The *Sleekcraft* factors are "illustrative rather than exhaustive," simply "providing helpful guideposts." *Id* at 1031. The factors are "not a scorecard, a bean-counter, or a checklist." *Id.* (citation omitted). Some factors are more important than others, and the

importance of any particular factor is **"case specific."** *Id.* (citation omitted). Further, a court cannot weigh conflicting evidence on any of the factors on summary judgment. *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1110 (9th Cir. 1999)(remanding for jury trial when several *Sleekcraft* factors required the weighing of conflicting evidence).

Here, genuine issues of material fact exist with respect to likelihood of confusion. Plaintiffs fail to address half of the *Sleekcraft* factors.[3] (Mot. at 10.) Even for the factors Plaintiffs do address, they do not present admissible evidence.

### 1. Plaintiffs Provide *No Admissible Evidence* on the Similarity of the Marks

Plaintiffs impermissibly rely on the result in a prior case to which Defendant was not a party or in privity with any party (*Ramirez v. Martinez*) to argue the similarities of the mark. (Mot. at 9.) However, as discussed above, Defendant **cannot be collaterally estopped** from challenging an issue in this case based the findings in a prior case to which he was not a party. *See Collins*, 505 F.3d at 882 n. 8 (reiterating that a requirement of offensive collateral estoppel is that the defendant was a party or in privity with a party to the prior suit).

Plaintiffs include a picture in their memorandum (Mot. at 9), which they identify as Defendant's mark. However, they do not identify the source of the picture or otherwise authenticate it. Plaintiffs have also not included a picture of the challenged mark for comparison.

---

[3] Plaintiffs do not even attempt to argue that Defendant's intent in selecting the mark; the marketing channels used; the likelihood of expansion into other markets; or the degree of care likely to be exercised by purchasers of Defendant's product or service weigh in favor of likelihood of confusion. (Mot. at 10.)

### 2. Plaintiffs Provide *No Admissible Evidence* of the Strength of the Mark

As purported evidence of the distinctiveness of its mark, Plaintiffs once again rely *solely* and impermissibly on results in prior cases in which Defendant was not a party or in privity with any party. Defendant **cannot be collaterally estopped** from challenging the strength of the mark at issue based on those results. *See Collins*, 505 F.3d at 882 n. 8.

Moreover, two courts have not, as Plaintiffs assert, "already held that the Mark is strong." (Mot. at 9.) Plaintiffs rely on certain findings made by the court in *Ramirez v. Sotelo* when it **issued a preliminary injunction**. (Mot. at 9 and Request for Judicial Notice ¶¶ 3-5 and Exhs. 3-5). However, in the Ninth Circuit, issues litigated in a preliminary injunction "are not res judicata and **do not form a basis for collateral estoppel**." *Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1350 (9th Cir. 1982) (emphasis added).

Plaintiffs next rely on the court's disposition in *Ramirez v. Martinez* (Mot. at 8), which resulted in a default judgment against one defendant and an order granting summary judgment against the other. (*See* Refiled Declaration of Eric Bjorgum at ¶2, Ex. A; Request for Judicial Notice at ¶8 and Ex.8.) Although the court in granting summary judgment found that the mark appeared strong, its decision was based on evidence presented **at the time of the litigation**. It did not rule on the strength of the mark in perpetuity or against all potential infringers. *See Glow Indus.*, 273 F. Supp. 2d at 1119 (strength must be viewed **at the time of the litigation**) (citing 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 11.83 (4th ed. 2002).) And, in any event, for the reasons discussed above, that factual determination is not binding on Defendant. *See Collins*, 505 F.3d at 882 n. 8.

Further, distinctiveness "does not end the enquiry" as to the strength of a mark; "it is only the first step." *Glow Indus.*, 273 F. Supp. 2d at 1119. The second step is the degree of recognition in the minds of the relevant customers. *Id.* A mark can be arbitrary

and thus conceptually strong but still lack significance in the marketplace for identifying its origin. *Id.* at 1120. Here, the fact that Plaintiffs have offered *no evidence* on the extent to which their mark enjoys market recognition "suggests that market recognition is weak." *See Id.* at 1119.

Accordingly, since Plaintiffs' evidence of the purported distinctiveness of the mark is *inadmissible* against Defendant, and they have presented *no evidence* of commercial strength, this factor also weighs in favor of no likelihood of confusion.

### 3. Plaintiffs Provide *No Evidence* of the Proximity or Relatedness of Goods or Services.

Plaintiffs base their claim that the proximity factor weighs on their favor solely on the unsubstantiated statement that "Plaintiffs and Defendant are using the mark Los Caminantes to advertise and to perform Latin music." (Mot. at 10.) However, Plaintiffs *do not cite any evidence* to support this claim.

Since Plaintiffs do not provide any evidence to support the proximity or relatedness of the goods or services here, this factor similarly weighs in favor of no likelihood of confusion.

### 4. Plaintiffs Provide *No Evidence* of Actual Confusion

Plaintiffs make the unsubstantiated claim that they have "had actual confusion." (Mot. at 10.) In support of that bald claim, Plaintiffs cite just one fact: *"Fans have written asking about which band will be playing."* (Mot. at 10; SSUF 24.) Plaintiffs' Separate Statement identifies Paragraph 5 of the Declaration of Anthony Ramirez ("Anthony Declaration") as the sole "supporting evidence" for that statement. But neither that paragraph nor any other part of the Anthony Declaration makes this assertion. Further, even if Paragraph 5 had contained or supported the statement, which would still not support actual confusion. There is no indication that Anthony Ramirez was the recipient of the alleged writings or that he otherwise has personal knowledge of

their contents. Indeed, he does not authenticate and attach the alleged writings to his declaration. More significant, Plaintiffs make no connection between the alleged writings and any act by Defendant.

The actual contents of Paragraph 5 also do not support actual confusion. Anthony Ramirez states, *"Frequently before or after shows, fans will come up to us and ask if we [sic] the "real" Los Caminantes."* (Anthony Decl. at ¶5.) There is, once again, no connection between this statement and Defendant. Indeed, the declarations submitted in support of Plaintiffs' Motion refer generally to ***multiple bands*** allegedly infringing the mark. *See* Motion at 12 ("The market is now flooded with ***three illegal bands***."); Bjorgum Decl. at ¶11 ("I wrote several letters to promoters and night clubs that were ***booking bands*** that infringed . . . the mark."); Agustin Jr. Decl. at ¶13 ("I have heard from our manager that promoters are not bargaining with us because of ***all the other fake Los Caminantes bands***.").

5. **Plaintiffs Provide No Evidence That The Alleged Infringement Caused Them Monetary Damages.**

The alleged trademark infringement has been going on since 2011, yet Plaintiffs have failed to produce any documentary evidence that this has caused them financial harm. Pursuant to FRCP 26(a)(1)(A)(iii), Plaintiffs were required to disclose to Defendant at the outset of the case "a computation of each category of damages claimed" and "make available for inspection and copying . . .the documents or other evidentiary material. . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  However, not only have Plaintiffs failed to make any documents related to their alleged damages available for inspection and copying, but their response in their initial disclosures to the computation of each category of damages was simply, **"N/A,"** i.e., not applicable. (See, Exhibit 9 to Zerner Declaration in Defendant's Motion for Summary Judgment).

"Rule 26(a) requires a party—in addition to providing a calculation of damages—to make "available for inspection and copying as under Rule 34 the documents or other evidentiary material ... on which such computation is based." The Advisory Committee Notes to Rule 26(a)(1)(c) accompanying its promulgation make clear that the rule "imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under Rule 34. A party claiming damages or other monetary relief must, in addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying as if a request for such material had been made under Rule 34." Fed.R.Civ.P. 26 Advisory Committee Notes to 1993 Amendments." *Design Strategy, Inc. v. Davis,* 469 F.3d 284, 295–96 (2d Cir. 2006).

Plaintiffs' failure to provide any response under Rule 26 and to provide documents supporting their claim for damages should prove absolutely fatal to their motion for summary judgment. As Plaintiffs contention is that they have incurred no damages as a result of Defendant's alleged infringement, they have no need for an injunction and cannot be awarded any monetary damages.

## V. GENUINE ISSUES OF MATERIAL FACT EXIST WITH RESPECT TO PLAINTIFFS' INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE CLAIM

### A. PLAINTIFFS PROVIDE *NO EVIDENCE* TO SUPPORT THEIR INFERENCE CLAIM

The elements of a claim for interference with prospective economic advantage include: (1) an economic relationship between the plaintiff and a third party with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts by defendant designed to disrupt the relationship; (4) actual disruption; and (5) economic harm to the plaintiff proximately caused by defendant's acts. *Crown Imports, LLC v. Superior Court*, 223 Cal.App.4th 1395, 1404

(2014). In addition, courts require that the alleged interference be wrongful beyond the fact of the interference itself. *Id*.

Here, Plaintiffs have failed to provide evidence to satisfy *any* of the requisite elements of their intentional interference with prospective business advantage claim.

(1) There is *no evidence* of an economic relationship between Plaintiffs and a third party. Plaintiffs state that they and Defendant play the "same clubs." (Mot. at 11.) However, no clubs are identified. (*Id*.) Paragraph 5 of the Anthony Declaration – the sole evidence Plaintiffs cite on this element – provides only that, "Frequently before or after shows, fans will come up to us and ask if we are the "real" Caminantes." (*See* Mot. At 11; SSUF ¶¶22-23.) Anthony does not identify any relationships with third parties.

(2) There is *no evidence* that Defendant had knowledge of Plaintiffs' unspecified relationships. Plaintiffs' claim that "[o]bviously [Defendant] knew" about them (Mot. at 11) is speculation, not evidence. (*Id.*) Further, their claim that Defendant "worked with promoters who know this market" (*id*.) is unsupported by evidence.

(3) There is *no evidence* that Defendant acted intentionally to disrupt the unspecified relationships between Plaintiffs and the unidentified clubs. Plaintiffs do not argue otherwise, let alone present evidence on this element. (*Id*.)

(4) There is *no evidence* that Plaintiffs' unspecified relationships were disrupted by Defendant or at all.

(5) There is *no evidence* that Plaintiffs have suffered economic harm based on Defendant's alleged acts. While they claim that they have been forced to lower their price per concert (Mot. at 7), they do not provide evidence tying this reduction to Defendant's alleged acts. In fact, they blame the decrease on multiple unidentified "***bands***." (*See* Mot. at 12 ("The market is now flooded with three illegal ***bands***.") SSUF ¶24 (Plaintiffs' "attribute" the reduction to the "the number of *infringing bands* playing.")

Moreover, the fact that Defendant has been performing since 2011, but Plaintiffs did not lower their prices until recently, indicates that any price reduction was caused by factors other than Defendant (e.g., Agustin Ramirez's health issues and the post-Covid music market, to name two possibilities.)

Finally, since as detailed above, there are genuine issues of material fact as to Plaintiffs' trademark infringement claim, there is also no evidence of any wrong beyond the interference itself.

### B.   PLAINTIFFS' INTERFERENCE CLAIM IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS[4]

The statute of limitations for tortious interference with contract in California is two years. *Kiang v. Strycula*, 231 Cal.App.2d 809, 811–12 (1965); *see* Cal. Civ. Proc. Code § 339(1). A tortious interference claim typically accrues "at the date of the wrongful act." *Trembath v. Digardi*, 43 Cal.App.3d 834, 836 (1974).

In the present case, Plaintiffs allege in their Complaint that Defendant began his alleged "wrongful act" in September 2011, when he first began touring as "Los Caminantes HN" or "Los Caminantes de Humberto Navarro" and concede that they were aware of his actions almost immediately. (Complaint ¶¶33-34, 41-63.) In support of their Motion, Plaintiffs offer evidence that in 2011, they filed a lawsuit against Defendant for trademark infringement, which they later dismissed (the "2011 Lawsuit") (SSUF ¶ 11.) The 2011 Lawsuit also contained a claim for intentional interference with prospective

---

[4] The statute of limitations bar to Plaintiffs' interference claim is one ground on which Defendant brought his pending Motion for Summary Judgment or, in the Alternative, Summary Adjudication, which is incorporated herein by reference, and discussed more thoroughly therein.

business advantage. (Complaint ¶31.) Thus, as Plaintiffs waited **more than nine years** until November 2020 to renew the claim, it is time-barred.

For these reasons, Plaintiffs' interference claim fails.

## VI. PLAINTIFFS' CAUSE OF ACTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF IS NOT A VIABLE CAUSE OF ACTION

Plaintiffs' Sixth Cause of Action is styled as a claim for "preliminary and permanent injunctive relief." However, injunctive relief is a remedy, not a cause of action. See, e.g., *Roberts v. Los Angeles County Bar Assn.,* 105 Cal.App.4th 604, 618 (2003) (citing *McDowell v. Watson,* 59 Cal.App.4th 1155, 1159 (1997)). *See also Lutz v. CBRE Grp., Inc.,* 2013 WL 4102157, at *9 (S.D. Cal. Aug. 13, 2013).  As this is not a cause of action, Plaintiffs cannot obtain judgment on this claim in their favor.

## VII.  CONCLUSION

In sum, Plaintiffs have not come close to meeting their burden of producing evidence sufficient to grant summary judgment.  Even assuming, *arguendo,* that the Court considers their evidence, Plaintiffs claims are barred by the doctrine of laches for the reasons set forth in Defendant's Motion for Summary Judgment.  Accordingly, Plaintiffs' Motion should be denied.

Dated: November 14, 2022                                  Law Office of Larry Zerner

                                                                      By: /Larry Zerner/
                                                                       Larry Zerner
                                                                       Attorney for Defendant Martin Navarro